SAMUEL A. McDANIEL, late Sheriff of New Castle County, plaintiff below, plaintiff in error, *vs.* JOHN G. ARMSTRONG, JOHN J. MEALEY, CHARLES C. MEGGINSON, ISAAC C. ELLIOTT, MERRITT N. WILLITS, C. CANBY HOPKINS and PHILEMMA CHANDLER, Chairman, constituting and composing the Levy Court of New Castle County, defendants below, defendants in error.

*Case Stated—Sheriff—Salary and Emoluments of Office—Statute—
Diminishing same—Constitution—Statute fixing Salary
—Prisoners; Custody and Board of—Statute.*

1. The act entitled " An Act to Establish the New Castle County Workhouse," approved March 16, 1899; and the act entitled " An Act Fixing an Annual Salary for the Sheriff of New Castle County," approved March 9, 1901, did not diminish the salary or emoluments of the Sheriff of said County in contravention of Section 4, Article 15 of the Constitution, which provides that " No law shall extend the term of any public officer, or diminish his salary or emoluments after his election or appointment."

2. The law of this State imposes no duty upon the Sheriff to board the prisoners, and whatever power or right he possesses in this regard is not a constitutional,

common law or immemorial power or right attached to his office, but plainly and purely statutory.

*(January 18, 1905.)*

NICHOLSON, CH., and PENNEWILL and BOYCE, J. J., sitting.

*Robert G. Harman* and *William H. Heald* for plaintiff in error.

*Horace G. Knowles* for defendants in error.

Supreme Court, January Term, 1904.

WRIT OF ERROR to Superior Court, in and for New Castle County.

PENNEWILL, J., delivering the opinion of the Court:

The Legislature of this State in 1899 passed an act entitled "An Act to Establish the New Castle County Workhouse;" which was approved by the Governor, became a law, and went into effect and operation March 16, 1899.

Section 1 of that act provided for the appointment, within thirty days, of a Board of Trustees for the Workhouse; and Section 2 authorized the Levy Court of the county to borrow the money necessary for the establishment of said Workhouse.

Section 3 provided as follows: "The trustees herein named shall, immediately after the passage of this Act, procure suitable lands for the erection of buildings, for the accommodation of all prisoners, sentenced to terms of imprisonment by the Courts of this State in and for New Castle County, including those sentenced and committed by the Municipal Court of the City of Wilmington, and by the Justices of the Peace for the said county. The title to said lands shall be vested in 'The Board of Trustees of the New Castle County Workhouse;' which is hereby authorized and empowered to take, receive and hold the same. The said

buildings shall be fully completed within two years from the passage of this Act. As soon as the said buildings shall be completed, and within ten days after notice in writing of such completion shall have been served upon the Sheriff of New Castle County by said Trustees, the Sheriff shall deliver to the Trustees at said buildings all the prisoners in the jail or in his charge, under sentence of imprisonment for a certain term, and all others held by him on commitment. The Sheriff is hereby expressly authorized and directed to make such delivery. Whereupon the said Trustees shall take charge and control such prisoners, and safely keep them for the residue of their terms of imprisonment, respectively, or until they shall be duly discharged."

By an Act passed March 2, 1901, the original Act providing for the establishment of the Workhouse, was amended by extending the time for the completion of the buildings for the period of six months. (*Chapter 140, Vol. 22, Del. Laws, 221.*)

An Act passed March 9, 1901, entitled "An Act fixing an annual salary for the Sheriff of New Castle County," provided as follows:

"SECTION 1. That the Sheriff of New Castle County shall receive an annual salary of five thousand dollars, payable in quarterly installments, and he shall also receive annually the sum of three thousand dollars for the purpose of defraying the expenses of such deputies as are necessary in performing the duties of the office. The above amounts shall be paid by the Levy Court in said County in the same manner that other county salaries are paid.

"SECTION 2. That the provisions of the foregoing section shall take effect at such time as the said Sheriff shall deliver to ' The Board of Trustees of the New Castle County Workhouse,' the prisoners in his custody, pursuant to the provisions of an Act entitled ' An Act to Establish the New Castle County Workhouse,' and known as *Chapter 247, Volume 21, Laws of Delaware.*

"SECTION 3. That all fees which are now by law taxable and payable to the Sheriff of New Castle County for his own use shall continue to be taxed as heretofore, but the same shall be collected by the said Sheriff and paid into the hands of the County Treasurer of New Castle County."—(*Chapter 73, Volume 22, Laws of Delaware, p. 122.*)

It appears by the case stated filed in this cause,

"2. That Samuel A. McDaniel was duly elected Sheriff of New Castle County and State of Delaware on or about the fourth day of November, A. D. 1900, for and during the term of two years from the first day of January, A. D. 1901, and that the said Samuel A. McDaniel took the oath of office, bonded, and in all other respects duly qualified himself for said office, and did on the first day of January, A. D. 1901, enter upon the duties of Sheriff of New Castle County aforesaid, and from said time until the expiration of the said term, to wit, the seventh day of January, A. D. 1903, hath in all respects duly discharged all the duties of the said office except as hereinafter explained in Sections 6 and 7 of this case stated.

"3. That from the first day of January, A. D. 1901, to the fourth day of November, A. D. 1901, he received all fees, perquisites and emoluments incident to and belonging to said office, by virtue of the various legislative enactments pertaining thereto ; but that from and after the fourth day of November, A. D. 1901, until the expiration of the said term and until the present day he hath not received the said fees, perquisites and emoluments, though he hath often demanded and still doth demand of the Levy Court of said New Castle County that he be paid the same.

"4. That the said fees, perquisites and emoluments belonging to said office, to which by law the said Samuel A. McDaniel, late Sheriff, as aforesaid claims he is entitled and which he has not received as aforesaid for the period of time from the fourth day of November, A. D. 1901, to the thirty-first day of December, A. D.

1901, amount to the sum of Nine Hundred and Twenty-one Dollars and eighty-nine cents ($921.89) and are itemized and fully and clearly set forth in a bill hereto annexed, which it is agreed shall become a part of this case stated, which bill the said Sheriff duly presented to the said Levy Court of New Castle County and demanded payment of the same, but the said Levy Court refused to pay the same or any part thereof, and still refuses to pay the same or any part thereof until the present day.

" 5. That among the fees, perquisites and emoluments, above enumerated in the annexed itemized bill are the fees, perquisites and emoluments of eight hundred and thirty-eight dollars and four cents ($838.04) which is the profit the said Sheriff would have received had he been permitted to board the prisoners at the county jail at New Castle from the fourth day of November, A. D. 1901, to the thirty-first day of December, A. D. 1901, the above sum being the profit at the rate of twelve and one-tenth cents per day, per prisoner, and eighty-three dollars and eighty-four cents ($83.84) which is the amount the said Sheriff would have received had he been permitted to receive on commitment, from the Courts of the aforesaid County of New Castle, the prisoners who were committed to the trustees of the New Castle County Workhouse.

" 6. That the said Sheriff Samuel A. McDaniel did from the first day of January, A. D. 1901, until the fourth day of November, A. D. 1901, duly receive the fees, perquisites and emoluments for the boarding of prisoners at the county jail at the rate of twenty cents per day, per prisoner, and for commitment of said prisoners at the rate of fifty-three cents per prisoner, at which time, to wit, on the twenty-first day of November, A. D. 1901, the said Sheriff Samuel A. McDaniel by order of the Court of General Sessions of the State of Delaware in and for New Castle County, and on the twenty-second day of November, A. D. 1901, by order of the Court of Oyer and Terminer of the State of Delaware in and for New Castle County against his will and protest was commanded to transfer and deliver all the prisoners then confined in the county jail in New Castle County aforesaid to the

bar of each of said Courts, on the twenty-second day of November, A. D. 1901, respectively; immediately after which the said prisoners were committed to the custody of the Board of Trustees of the New Castle County Workhouse, where they have since been continuously confined except those whose terms have since expired.

" 7. That the said Samuel A. McDaniel, Sheriff as aforesaid, did on the first day of January, A. D. 1901, duly discharge all the duties imposed by the law upon him in connection with his said office save that of receiving on commitment and of boarding the prisoners at the county jail which he was prevented from doing as set forth in Section 6 of this case stated.

" 8. That the fees, perquisites and emoluments of said office exceed the sum of eight thousand dollars ($8000.00) per year.

" 10. That said Workhouse was not completed until the fourth day of November, A. D. 1901, and that thereupon ten days' notice was given said Sheriff as set forth in said law to transfer and deliver to the Board of Trustees of the New Castle County Workhouse, the prisoners then confined in the county jail, and the said Sheriff at the expiration of said time refused to transfer the said prisoners to the Board of Trustees of the New Castle County Workhouse whereupon, to wit, on the twenty-first day of November. A. D. 1901, the Court of Oyer and Terminer, respectively, in and for New Castle County, ordered the said Sheriff to bring the prisoners of the said county jail to the bar of each of said Courts as is set out in Section 6 of this case stated."

The single question presented to the Court in this case for determination, is whether, under the Acts and facts above mentioned, the salary or emoluments of the plaintiff in error, as Sheriff of New Castle County, were diminished, in contravention of Section 4, Article 15, of the Constitution of this State, which provides: " No law shall extend the term of any public officer, or diminish his salary or emoluments after his election or appointment."

It may be admitted that the plaintiff in error was, during the time covered by his claim, a public officer within the meaning of said constitutional provision.

Much of the argument made in behalf of the plaintiff in error was in support of the second proposition contained in his brief, viz: "The word 'emolument,' in Section 4 of Article 15 of the Constitution imports any perquisite, profit, advantage or gain arising from the possession of an office. And the compensation ordered by authority of law to be paid to the Sheriff for the board of prisoners in the county jail is an emolument of his office, within the meaning of Section 4, Article 15 of the Constitution."

Having concluded to rest our decision in this case upon another ground, it will not be necessary to pass upon this question. And while, therefore, we do not undertake to decide whether or no the fees and perquisites sued for by the plaintiff in error in this action are *emoluments* within the meaning of the Constitution, we may suggest in passing that the present case differs in several particulars from the case of *Apple vs. County of Crawford, 105 Pa. St., 300,* upon which counsel for the plaintiff in error so confidently relied.

It appears by the Pennsylvania case that the boarding of the prisoners was a duty imposed upon the Sheriff by law. "The boarding of the prisoners," said the Court, "was certainly one of his official duties imposed upon him by law. The service which it (emolument) compensates is official service and is compulsory." Under the law of the State of Delaware the Sheriff may board the prisoners or not as he pleases. It may be done by him or by the keeper of the jail. *Rev. Code, 421.*

It also appears from the Pennsylvania case that after the Sheriff was elected the *per diem* for the board of prisoners, which had been fixed by law, was reduced by statute during his term of office. In our case the *per diem* was fixed by a general resolution of the Levy Court, and the object and design of the statute complained of was not to reduce the board, but to transfer the custody of the prisoners from the Sheriff to the Workhouse.

The first proposition so ably and elaborately presented by the counsel for plaintiff in error is in the following words:

" It is a settled principle of law that the adoption of a statute of another State carries with it the construction that the Courts of that State have placed upon it. And the same rule of construction applies in the adoption of a particular constitutional provision of another State. And the construed statutes or constitutional provision, constitutes a precedent, and has the force of a *stare decisis* in the State adopting the same."

This principle or rule of law was invoked by the plaintiff in error in support of his contention that the profit or gain derived by the Sheriff from the board of the prisoners constituted an emolument of his office within the meaning of the constitutional provision. But having concluded, as above stated, to render no opinion upon this question, it is manifestly unnecessary for us to consider this proposition in our determination of the present case.

The third point urged by plaintiff in error, is that " A statute in the eye of the law is deemed to have been passed for the first moment of time when it becomes operative. And different provisions of the same statute may take effect at different times."

This general principle is sought to be applied to the present case by reasoning in this wise:

" In the statute relating to the New Castle County Workhouse, the part thereof relating to the appointment of the Board of Trustees became operative at once upon the appointment of the trustees; but Section 3 of said Act, which directed the Sheriff to deliver to the trustees all prisoners in the jail or in his charge, did not take effect or become operative until the happening of two contingencies, the occurring of two events, and the performance of two conditions precedent, viz: (1) The completion of said buildings as a workhouse; and (2), The giving of ten days notice in writing to the Sheriff by the Trustees of the completion of the buildings."

It was earnestly insisted by counsel, that because "A statute passed to take effect at a future day must be understood as speaking from the time it goes into operation and not from the time of its passage," that therefore the third Section of the Workhouse Act did not become operative until the fifteenth day of November, 1901, or more than one year after the Sheriff's election to his said office; and as it diminished his emoluments, it is null and void, as being repugnant to Section 4, of Article 15 of the Constitution of this State.    Such is briefly, but substantially, the argument of the plaintiff in error upon this point, and he cites in support of his contention the following cases, viz :

*Peck vs. Weddell, 17 Ohio St., 271; Guildin vs. Schuylkill County, 149 Pa. St., 210; and Commonwealth vs. Comrey, Appeal, 149 Pa. St., 216.*

In the first of those cases objection was made to an act of the Legislature because it undertook to effect a removal of the county seat at an indefinite time, upon a contingency uncertain.    The Court said : " Many laws can only operate upon the happening of certain contingencies, yet they are valid.    We think it clearly competent for the Legislature to provide that a county seat shall not be removed till suitable buildings shall have been provided," etc.    In that case it seems the Legislature had provided for the removal of the county seat from Perrysburg to Bowling Green *when suitable buildings for that purpose were erected and completed.*    Of course that part of the statute did not take full effect until the happening of the contingency mentioned, viz., the completion of the buildings at Bowling Green.    While the case does not seem to us to be particularly applicable to the facts in the case before us, it does disclose that the removal of the county seat was to take place at an indefinite time, and upon a contingency altogether uncertain.

These other two cases are of very recent date, and more similar to our own, but different from ours in one very important particular, which we shall endeavor to make clear.

These two cases raised precisely the same question of law, the one involving the Coroner, and the other the Sheriff.

In the year 1876 the Legislature of Pennsylvania passed a law providing that in counties having a population of over 150,000, the officers of the county should receive a salary instead of certain fees prescribed by law.   One Guldin was elected Coroner of Schuylkill County in the year 1889, over ten years after the passage of the statute.   He entered upon the duties of his office in January, 1890.   In June, 1890, it was ascertained by the federal census that the county had acquired a population of over 150,000 and an attempt was made to make the Coroner accept the salary instead of the fees.

The Court held that the act was not made to apply to an officer elected when the county contained less than that number, by an increase to that number during his term.   The language employed by the Court in some parts of the opinion may seem broad enough to cover a case like our own, but the decision and reasoning are important only so far as the same are based upon the facts of the particular case.

It will be observed that the happening of the event upon which the law in that case was to take effect, was purely and entirely contingent.   It could in no sense be regarded even as notice to the candidate for office that a change in respect to his compensation would be effected during his term.   Indeed it may be said that it was hardly probable that the event would happen during his term, upon which the law would go into operation in that county.   The case at bar differs from the Pennsylvania case in this very important particular, viz :   That in the Workhouse Act the time was practically fixed at which the Sheriff was to deliver to the trustees the prisoners in the jail or in his charge.   Said act in Section 3 provided that the buildings should be fully completed within two years from the passage of the act; that as soon as the buildings should be completed, and within ten days after notice in writing of such completion was served upon the Sheriff by the trustees, the Sheriff should deliver to the trustees all the prisoners in the jail or in his charge. . . . . And the Sheriff was expressly authorized and directed to make such delivery.   The Act was

passed and went into effect before the Sheriff was elected; it was mandatory in all its parts, and its operation in no wise contingent.

The delivery of the prisoners to the trustees by the Sheriff did not, under the act, depend upon a contingency that might never happen, or might not happen during the term for which he was seeking to be elected. It was expressly provided, not only that such delivery should be made as soon as the buildings were completed, and ten days' notice in writing given of such completion, but it was also expressly provided that the buildings should be completed within two years. The act was passed in March, 1899, and it was fair notice to any person who might be a candidate for the office of Sheriff in New Castle County in the year 1900, that the prisoners would be taken from his custody and delivered to the trustees of the Workhouse during his term of office. A fair construction of the language of the statute can leave no doubt upon this point. Suppose the Legislature of this State had passed an act prior to the election of the plaintiff in error as Sheriff of New Castle County in 1900, providing that on the first day of January, 1902, the Sheriff should deliver to some other custodian the prisoners in his charge; could it be contended successfully that such an act would be invalid because repugnant to said constitutional provision? We think not. In principle such an act would differ not at all from the one under consideration. In either case the candidate for office would have had clear and definite notice, before his election, that at or near a certain time during his term he would be deprived of the custody of the prisoners in his charge.

It matters not that the Legislature, subsequently to the passage of the Workhouse Act, extended the time for the completion of the buildings; because such extension worked to the advantage, and not the injury, of the Sheriff. It simply gave him the custody of the prisoners for six months longer than he would otherwise have had it.

There remains to be noticed only the last proposition of the plaintiff in error, viz: " The Sheriff is a constitutional officer (*Sec. 22, Art. 3,* and *Sec. 1, Art. 15*), and independent of *Section 4*

of *Art. 15,* the Legislature cannot take away from him the care, custody and control of the county jail, or the prisoners confined in said jail."

The argument in support of this contention, is that while no reference is made in the Constitution to the powers, rights and duties of the Sheriff, nevertheless he is a constitutional officer, and his general statutory powers are simply declaratory of the old common law powers which Sheriffs have exercised from time immemorial; and that such immemorial powers were silently incorporated into the Constitution and made a part of it. Otherwise the Legislature could take away all the rights, powers and duties from the Sheriff and leave him still a constitutional officer, but an officer in name only.

Such is in substance the reasoning of the Courts in the cases cited by counsel for the plaintiff in error upon this point.

*State ex rel. Kennedy vs. Brunst, 25 Wis., 112 ; People ex rel. McEwan vs. Kulee, 29 Hun., 175; Virtus, Sheriff, &c., vs. The Board of Freeholders, Essex County, New Jersey Supreme Court, Nov. 15, 1901; Aller vs. Wayne County Auditors, 43 Mich., 77.*

Without approving or disapproving the reasoning and conclusions in those cases, it need only be said that it does not distinctly appear how the powers, rights and duties there referred to were secured to the Sheriff. It seems from some of the cases that the statutes were silent upon the subject, and from all, that such powers, rights and duties were recognized as common law powers, and duties, rights attached to the constitutional office of Sheriff from time immemorial, and could not therefore be detached by statute.

In this State the right to the charge and care of the county jail, and to the custody of the prisoners confined therein, is distinctly conferred by statute.

It is provided, (*Rev. Code, 421,*) that " The Sheriff of each county shall have charge of the jail of his county, and shall keep the same securely, either personally, or by a keeper whom he shall appoint, and for whose conduct he shall be responsible."

And the right of supplying board to the prisoners in the jail is conferred by statute, and not upon the Sheriff as such, exclusively, but upon the Sheriff or Keeper of the jail; and the compensation therefor is to be so much per day as the Levy Court of the county should by general resolution determine. (*Rev. Code, 421.*)

It is perfectly manifest, therefore: (1.) That the law imposed no duty upon the Sheriff to board the prisoners. (2.) That whatever power or right he possessed in this regard was not a constitutional, common law and immemorial power, or right, attached to his office, but plainly and purely statutory. Independent of Section 4, Article 15, of the Constitution, which we have already considered, we can see no valid constitutional objection to a statute which deprives the Sheriff of the custody of the prisoners, and the effect of which is to deprive him of the right to board them. Indeed, as we have intimated above, it is by no means certain that the removal of the prisoners from the custody of the Sheriff would diminish the emoluments of his office within the meaning of said Section 4 of Article 15 of the Constitution.

We find no error in the judgment of the Court below, and the same is therefore affirmed.

Judgment below affirmed.