## MACON COUNTY v. BARNETT R. WILLIAMS, Appellant.

### In Banc, October 1, 1920.

1. **COMPENSATION OF JUDGES: Traveling Expenses.** Actual expenses incurred by a circuit judge while engaged in holding court at any place in his circuit other than the place of his residence, is not compensation, and the allowance by statute of twelve hundred dollars a year for such expenses is not to be considered a part of his salary.

2. **COMPENSATION OF PROBATE JUDGES: Equal to Salary of Circuit Judge.** Where the statute provided that the amount of fees a judge of the probate court may retain for his own use shall not exceed "a sum equal to the annual compensation pro-

vided by law for a judge of the circuit court having jurisdiction in said county," the word "compensation" does not include the twelve hundred dollars allowed by law to the circuit judge for necessary expenses incurred by him while holding court at any place in his circuit other than the place of his residence, but means only the two thousand dollars which the statute says he shall receive for his services; and the probate judge is not entitled to credit on account of salary at the rate of $3200 a year, but only at the rate of $2000 a year on that account.

3. **COMPENSATION: Expenses. Administrative Interpretation of Statute.** Contemporaneous practical construction by the State Auditor of a former statute, that the words therein providing funds for paying the expenses of judges then in office did not include their compensation, but was in addition thereto, is of aid to the courts in construing similar words in statutes subsequently enacted.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

Affirmed.

*Ben Franklin, Dan R. Hughes* and *John R. Hughes* for appellant.

(1) The constitutionality and some other pertinent questions involved in Sec. 10695, R. S. 1909, with much research and some patience, seems to be settled in this State. At least no question is made in this case as to its constitutionality. State ex rel. v. Imel, 280 Mo. 565. (2) Section 10684, providing for $100 per month for expenses of circuit judges, was enacted by the Legislature in 1905, and approved March 10, 1905, Section 10695, was enacted by the Legislature during the session of 1905, and fixed the compensation of probate courts, and was approved April 1, 1905, more than thirty days after the passage of the act providing for $100 per month for expenses of circuit judges. (3) Compensation of a circuit judge for the same year measures the compensation of the probate judge. It fixes the maxium compensation of the probate court not a stated salary of the

circuit judge, but the total of all emolument he secured by virtue of his being circuit judge, and constitutes his compensation. State ex rel. McGrath v. Walker, 97 Mo. 162; Cunningham v. Current River Ry. Co., 165 Mo. 270; Bates v. City of St. Louis, 153 Mo. 18; 29 Cyc. 1428; 36 Cyc. 1106-7. Compensation is a generic term and includes salary, fees, pay, remuneration for official services performed, in whatever form or manner, or at whatever periods the same may be paid. State ex rel. v. Farmer, 271 Mo. 306; State ex rel. v. Rumbold, 238 Mo. 168; People ex rel. Bockes v. Wemple, 115 N. Y. 309.

*Waldo Edwards*, Prosecuting Attorney, *George N. Davis* and *Ed. S. Jones* for respondent.

(1) The right to salary, as a public officer, is a legislative grant and is to be strictly construed against the officer. City of St. Louis v. Banks, 107 Mo. 611; Sanderson v. Pike County, 195 Mo. 605; Green County v. Lydy, 263 Mo. 77. (2) Section 23, Article 6, Constitution of Missouri, provides that judges of circuit courts and other courts of record receiving a salary shall, at stated times, receive such compensation for their services as may be provided by law, but it shall not be increased or diminished during the period for which they were elected. Cunningham v. Current River Ry. Co., 165 Mo. 277. To such constitutional prohibition, it is the compensation for services to be rendered and not traveling and other incidental expenses that is forbidden to be raised. Kirkwood v. Soto, 25 Pac. 488. (3) Section 10695 provides that the amount of fees collected by the probate judge shall be limited to a sum equal to the annual compensation provided by law for judges of circuit courts having jurisdiction in such county. The $1,200 being here allowed as and for expense money is not compensation provided by law for circuit judges nor is it compensation of circuit judges for their judical services within the meaning of such statute. Milwaukee

County v. Halsey, 136 N. W. 139; Kirkwood v. Soto, 25 Pac. 488; State ex rel. Buchanan Co. v. Imel, 280 Mo. 565; State ex rel. Green Co. v. Lydy, 242 Mo. 316; State ex rel. Gray v. Wilder, 206 Mo. 541; McCoy v. Hamden, L. R. A. 1915 E. 858. (4) A contemporaneous and practical construction given by the Legislature and those concerned in the administration of the law is entitled to great weight. Cook Co. v. Healey, 78 N. W. 623.

BLAIR, J.—This action grew out of a difference of opinion concerning the maximum amount of fees which the probate judge in Macon County might legally retain for the years 1915, 1916, 1917 and 1918. The judgment is for $3309.33. Approximately one-third of this sum was held by the trial court to be due for each of the years 1916, 1917 and 1918. Nothing was found due for 1915. In 1916, 1917 and 1918, appellant collected, respectively, $3307, $3770.20 and $3941. The trial court credited appellant with salary at $2000 per annum and allowed him credits for clerk hire. Appellant's position is that he was entitled to credit on account of salary at the rate of $3200 per annum. If he is correct in this, the judgment is wrong. This is the sole question he briefs.

Macon County has a population of less than 150,000, and it and Shelby County constitute the Second Judicial Circuit of this State.

Prior to the Act of April 1, 1905 (Laws 1905, pp. 155, 157; Sec. 10695, R. S. 1909), the probate judge of Macon County was entitled to retain all fees collected. By the act mentioned this was changed. The amendment provided that:

"Provided further, that whenever, after deducting all reasonable and necessary expenses for clerk hire, the amount of fees collected in any one calendar year by or for any one probate judge in any county in this State during his term of office, and irrespective of the date of the accrual of such fees, shall exceed a sum equal

to the annual compensation provided by law for a judge of the circuit court having jurisdiction in such county, then it shall be the duty of such probate judge to pay such excess less ten per cent thereof . . . into the treasury of the county in which such probate judge holds office, for the benefit of the school fund of such county."

Appellant contends the "compensation" of the circuit judge having jurisdiction in Macon County was, in the years mentioned, $3200. Respondent contends, and the trial court held, it was $2000. The meaning of the word "compensation" as it appears in the statute is the key to this case.

Section 9697, Revised Statutes 1899, provided that: "The officers of State shall receive for their services, annually, the following sums: . . . third, the judges of the circuit courts, each, two thousand dollars; . . ."

Section 9701, Revised Statutes 1899, provided that: "Every judge of a circuit court or of a criminal court in this State shall be allowed and paid all sums of money actually expended by him in necessary expenses while engaged in holding any regular, special or adjourned term of court at any place in his circuit other than the place of his residence therein, or while engaged in going to and from any such place for the purpose of holding such terms of court, and such sums of money for said expenses shall be paid out of the State Treasury in the same manner that the salaries of circuit judges are now paid by law; but no money shall be paid from the Treasury under the provisions of this section until such judge shall file an itemized account with the State Auditor, showing such actual expenses incurred by him."

This section (Sec. 9701, R. S. 1899) was separately enacted in 1895 (Laws 1895, p. 128) and the title of the act was: "An Act to provide for the payment of the expenses of the judges of the circuit courts of this State, while holding court in their circuits."

March 10, 1905 (Laws 1905, pp. 291, 292), Section 9701, Revised Statutes 1899, was amended. The amendatory act was entitled: "An Act to repeal Section 9701 of the Revised Statutes of Missouri of 1899, relating to the expenses of the judges of circuit courts and criminal courts, and to enact a new section in lieu thereof relating to the same subject and to be known as Section 9701." Section 1 of this Act of 1905 follows the title, and the new section enacted (now Section 10683, R. S. 1909) substituted a lump sum of $1200 per annum to cover the expenses provided for in the old section and the amended one.

This question, whether allowances to officers for expenses comes within the meaning of the word compensation, has arisen in several cases. In Wisconsin, under a constitutional provision somewhat analogous to ours, in so far as the question presented was concerned, it was held that a statute providing for a payment to each circuit judge of $400 per annum "as and for his necessary expenses while in discharge of his duties," did not constitute additional "compensation" in the constitutional sense. [Milwaukee County v. Halsey, 149 Wis. l. c. 87.] In McCoy v. Handlin, 35 S. D. l. c. 514 et seq., under a more comprehensive constitutional provision than ours, the Supreme Court of South Dakota held that an allowance of $600 per annum to the supreme judges "in consideration of expenses" was not in violation of the prohibition against increasing the compensation of judges. The court held that the salary provided could not be increased, but that the allowances of expenses, as such, did not have that effect. In considering a similar question with respect to a claim that a Federal judge, who occupied a house belonging to the Government in the Canal Zone, must account for the rent thereof, CLAYTON, J. (Smith v. Jackson, 241 Fed. l. c. 770), quotes from the opinion in the case of McCoy v. Handlin, as follows:

"There it was said: 'It is clear that the Legislature did not intend, in the enactment of such legislation, to

increase the salaries of the judges, or to grant them
any perquisites or emoluments for the discharge of their
duties, but only intended to assure them, in so far as
possible, that for the performance of their official duties
alone, and not for the performance of such duties and
the payment of the expenses incident thereto, they should
receive the salaries provided by law for the performance
of such duties.' And again, the court said: 'These men
(the framers of the Constitution of South Dakota) must
have known that Section 1, Article 2, of the Federal Con-
stitution declared that the President should receive for
his services a compensation "which shall neither be in-
creased nor diminished during the period for which he
shall have been elected, and he shall not receive within
that period any other emolument from the United States
or any of them." These men must have known that the
word "emolument" was, as recognized by every authori-
ty, a term broad and comprehensive, one which includes
within it "perquisites," "salary," "compensation,"
"pay," "wages," and "fees." These men must have
known that, with the above provisions of the Federal
Constitution in force, the Congress of the United States,
a body of men which at all times during the history of
this Government has had among its members many of
the greatest constitutional lawyers of the day, had en-
acted legislation under which the President, for nearly
a century prior to the framing of our Constitution, had
been furnished a home, horses, carriages, servants, house-
hold equipment, and many other things incidental to
and appropriate to his high office. These men must have
known that such Federal legislation had never been ques-
tioned either as regards its propriety or its constitution-
ality. These men must have known that in practically
every State of the Union (in many of which there were
constitutional provisions similar to the one above refer-
red to in the Federal Constitution and to the ones relied
upon by defendant in this case) there had been legislative
enactments making provisions for the several governors
similar to those made by the Federal Congress for the

President, as well as innumerable measures appropriating money to be paid other officers to recompense them for expenses incurred in the discharge of their official duties. Is it possible for any one to presume that these men, with all these facts in mind, intended, by the words used in our Constitution, to prohibit allowances for expenses incident to the discharge of public duties? Further light has since been thrown upon the construction given to the provision of the Federal Constitution above referred to by the Act of June 23, 1906 (34 Stat. at L. 454, c. 3523; Comp. State. 1913, sec. 225), which provides: "That hereafter there may be expended for or on account of the traveling expenses of the President of the United States such sums as Congress may from time to time appropriate, not exceeding $25,000 per annum, such sum when appropriated' to be expended in the discretion of the President and accounted for on his certificate solely." Under appropriations thereafter made by Congress, Presidents Roosevelt and Taft received, and today President Wilson is receiving, thousands of dollars each year. So far as we know, it has never been suggested that the money so allowed was an "emolument," and therefore unconstitutional. No one has ever seen fit to accuse these Presidents of being grafters. The judges of the Federal courts, whose salaries are fixed by a law, declaring that such salaries shall be the "compensation for their official services," draw from the United States Treasury a sum not exceeding $10 per day when absent from the places of their residence. [Act March 3, 1911, c. 231, sec. 259; 36 Stat. at L. 1161; Comp. Stat, 1913, sec. 1236.] This allowance is not given as an increase of salary but to cover the expenses incident to their being away from home in the discharge of their duties.' "

Of this opinion Judge CLAYTON says it "was well considered, instructive and illuminating." On error to the district court, the Circuit Court of Appeals for the Fifth Circuit contented itself with saying: "The elaborate opinion of Judge CLAYTON covers the entire case and fully justifies the judgment rendered. We find none of

the assignments of error well taken." On error to the Supreme Court (Smith v. Jackson, 246 U. S. 388), in an opinion prepared by Mr. Chief Justice WHITE, the judgment of the Circuit Court of Appeals was affirmed. The court referred to the opinion of Judge CLAYTON as "elaborate and careful, . . . making perfectly manifest the error of the Auditor and his wrong in refusing to observe the ruling of the Attorney-General in the premises," and characterized the action of the Auditor in prosecuting the writ of error as "a plain abuse . . . of his administrative discretion."

In Kirkwood v. Soto, 87 Cal. 394, a question similar to that in the McCoy case was decided in the same way. In State v. Sheldon, 78 Neb. 552, it was held that a statute providing a residence for the Governor was not obnoxious to a constitutional provision which fixed his salary at a definite sum and prohibited him from "receiving . . . any perquisite of office or other compensation."

In addition, the Legislatures of 1895 and 1905 provided funds for paying the expenses of judges then in office, and the Auditor paid them under the acts of 1895 and 1905. This was violative of the Constitution if appellant is correct in his present contention. Contemporaneous practical construction is frequently relied upon by the courts in the solution of questions of this kind. [State v. Sheldon, supra; Cook County v. Healy, 222 Ill. 310; State ex rel. v. Billheimer, 178 Ind. 83.]

From these authorities, the reasoning quoted, and the principle last mentioned, it follows that the provision for the payment of expenses of circuit judges did not provide additional "compensation" in the constitutional sense or in the sense of Section 10695, Revised Statutes 1909, and the trial court was right in holding that appellant could not lawfully retain, in addition to an amount equaling the circuit judge's salary, an additional sum equal to the amount allowed the circuit judge for expenses.

The allowance is made to the circuit judges expressly for expenses which the circuit judge must incur in the performance of duties for which there is no counterpart imposed upon probate judges. The judgment is affirmed. *Walker, C. J., Williams, Woodson, Goode* and *Williamson, JJ.*, concur.