# TAXPAYERS' LEAGUE OF CARBON COUNTY, WYOMING v. McPHERSON, ET AL.

(No. 1951; February 11, 1936; 54 Pac. (2d) 897)

For the plaintiff there was a brief and oral argument by *N. R. Greenfield* and *Harold M. Johnson,* of Rawlins.

254

For the defendant, there was a brief and oral argument by *R. R. Rose,* of Casper.

RINER, Justice.

Constitutional questions reserved and certified by the district court of Carbon County on its own motion, under the procedure indicated by Sections 89-5001 to 89-5003, inclusive, of the Wyoming Revised Statutes, 1931, bring this case here prior to its final disposition in that court. The pleadings in the cause are simply the petition of the plaintiff, which seeks to recover of the defendants certain sums of money, which upon the facts therein alleged are claimed to have been unlawfully received from Carbon County by both the defendant McPherson, as sheriff of that county, and by his Deputy and Under-sheriff E. R. Watson, and rightfully should be repaid by the said McPherson and the United States Fidelity and Guaranty Company as surety on his official bond as such sheriff, and the general denial separate answers of each of the defendants.

It was stipulated by the parties that the action should be tried upon an Agreed Statement of Facts, which has been duly certified in the record now before us. From that statement we take those facts only

which we deem necessary and material to be considered in disposing of the constitutional questions submitted, and briefly stated these are:

The preceding November the defendant McPherson, having been duly elected sheriff of Carbon County, Wyoming, on or about January 5, 1931, he qualified as such officer by furnishing the bond and taking the oath required by law. The sheriff's term of office in this state being fixed by statute (W. R. S., 1931, Section 30-801) at "two years and until his successor is elected and qualified or appointed and qualified," McPherson once more sought the office, and was in November, 1932, re-elected and again duly qualified as sheriff on or about January 2, 1933. His official bond was furnished by the United States Fidelity and Guaranty Company, a corporation organized under Maryland law and authorized to transact a surety business in this state.

In the necessary performance of the duties of his office McPherson traveled in Carbon County and outside the county seat thereof from February, 1931, to December, 1932, both months inclusive, a total distance of 29,017 miles. Each month during this period of time he presented his itemized and verified claims, charged at the rate of ten cents per mile, for the distance he had traveled, to the Board of County Commissioners of Carbon County, and these monthly claims were duly paid by the county. From February, 1933, to February, 1934, both months inclusive, he in like manner necessarily traveled in his county, without the county seat thereof, a total of 22,247 miles, for which he presented to said board from month to month properly itemized and verified claims, charged at the rate of eight cents per mile, which claims were also paid by the county. In April, 1934, McPherson presented to the said board a claim, duly itemized and

verified, for two cents additional on the 22,247 miles above mentioned, in the sum of $444.94, and this claim was paid from county funds. In December, 1934, he also submitted to the same body his claim, duly itemized and verified, for five cents additional on the 29,017 miles already referred to, in the sum of $1450.85, and this claim likewise was paid from the county funds. From month to month during the period from March, 1934, to December, 1934, both months inclusive, McPherson in the performance of his official duties as sheriff of Carbon County necessarily traveled in that county and without the county seat a total of 16,658 miles, for which mileage he monthly presented to the board aforesaid his itemized and verified claims at ten cents per mile, and received payment thereof from the county funds, in the total sum of $1665.80. All this traveling above described was done in his own automobile.

E. R. Watson as the duly qualified and acting undersheriff and deputy sheriff of said county, during the period March, 1931, to December, 1934, both months inclusive, traveled certain stated mileage, also using his own automobile, in the performance of his necessary duties as such officer, and presented to the board aforesaid his itemized and verified claims therefor, and these were paid from county funds, all in substantially similar fashion as were those of his superior officer, as heretofore detailed. Thereby, in April, 1934, Watson received $204.24 additional at two cents per mile, charged on 10,212 miles traveled from February, 1933, to February, 1934, both months inclusive, for which he had previously billed the county and had been paid at the rate of eight cents per mile, and in December, 1934, he received $670.65 additional at five cents per mile on 13,413 miles traveled from March, 1931, to December, 1932, both months inclusive, for which he had previously billed the county and had

been paid ten cents per mile. From March, 1934, to December, 1934, he traveled officially, using his own automobile, a total of 10,183 miles, for which he monthly billed the county at ten cents per mile, and was paid therefor the sum of $1018.30.

The only controversy in the case, as appears from the Stipulated and Agreed Statement of Facts, is "as to the amount per mile, which in view of the constitutional and statutory provisions of the State of Wyoming, the said John McPherson and the said E. R. Watson were and are entitled to receive." Plaintiff's petition aforesaid claims that for the years 1931 and 1932 the sheriff and his deputy collected five cents per mile in excess of the legal rate, and during the years 1933 and 1934 they each collected two cents more than was legally allowed.

Section 32 of Article III of the Wyoming Constitution provides so far as material here: " * * * no law shall extend the term of any public officer or increase or diminish his salary or emolument after his election or appointment." Section 1 of Article XIV of the same instrument declares in part: "All state, city, county, town and school officers, (excepting justices of the peace and constables in precincts having less than fifteen hundred population, and excepting court commissioners, board of arbitration and notaries public) shall be paid fixed and definite salaries." The first sentence of Section 2 of this article reads: "The legislature shall provide by law the fees which may be demanded by justices of the peace and constables in precincts having less than fifteen hundred population, and of court commissioners, boards of arbitration and notaries public, which fees the said officers shall accept as their full compensation." The remainder of this section requires "all other" officers to keep accurate accounts and pay all fees collected into the

proper treasury, it being provided, however, that the sheriff in addition to his salary shall be entitled to receive from the party for whom services are rendered in civil cases such fees as may be prescribed by law. Section 3 of said article fixes the maximum limits of the salaries of county officers, and this section with Section 30-802, W. R. S., 1931, establishes the salary of the sheriff of Carbon County at the sum of $2000.00 per annum. Section 30-806, W. R. S., 1931, provides: "The sheriff shall, in addition to the salary and fees hereinbefore allowed, receive his actual and necessary traveling expenses while engaged in the discharge of his official duties, * * *."

The defendant McPherson being elected in November, 1930, for the two year sheriff's term commencing the following January, there was then in effect a statute (Chapter 103 of the Laws of Wyoming, 1921) reading so far as pertinent now:

"When it becomes necessary * * * * * * for any county officer, in the performance of his official duties, to travel within his county, it shall be lawful for such officer to use his own automobile, or other conveyance, and to receive compensation for its use at the rate of fifteen cents for each mile actually and necessarily traveled while in the performance of said official duty." Chapter 54, Laws of Wyoming, which became effective February 18, 1931, amended and re-enacted the quoted language of Chapter 103 aforesaid, the only change being that the word "ten" was substituted in place of the word "fifteen" in the earlier law, thus reducing the mileage rate five cents. As so modified the law appears as Section 30-116, W. R. S., 1931. This statute was by Chapter 66, Laws of Wyoming, 1933, repealed, and additionally thereby, so far as it affects the instant case, there was enacted the following:

"In all cases where a mileage fee or mileage expense is allowed to any state, county or precinct officer, it

shall not exceed the rate of eight cents per mile, for each and every mile actually and necessarily traveled in the performance of the duties of his office. In determining the mileage it shall be computed by the nearest practicable route. It shall be lawful for such officer to use his own automobile, or other conveyance, in the performance of such official duties."

These last quoted provisions became effective February 15, 1933.

There have been certified for answer by us ten alleged reserved constitutional questions. In the recent case of Public Service Commission of Wyoming v. W. C. Grimshaw, 49 Wyo. 158, 53 Pac. (2d) 1, we mentioned several rules established by the decisions of this court and governing the presentation and disposition of cases submitted here on reserved constitutional questions. Having those in mind, we refer now also to another of these rules, as several of the questions before us at this time fail to conform to it.

In Salt Creek Transportation Company v. Public Service Commission, 37 Wyo. 488, 263 Pac. 621, it was pointed out that this court is not required to answer reserved questions from the district court involving the constitutionality of a statute where the specific constitutional provision asserted to be violated by it has not been designated.

As we view the record in this case and the contentions advanced by the parties, both in their briefs and on oral argument, it will suffice to here set forth but two of the submitted questions. Their disposition will, we think, render answers to the others unnecessary, some of which, as has been indicated, are not under our previous decisions required to be at all considered. These controlling questions are numbered respectively "Ninth" and "Tenth" and read:

"NINTH. Is compensation for the use of automobiles or other conveyances by county officers as pro-

vided by the legislative acts of 1931 and 1933, above referred to, an emolument which cannot be increased or diminished after the election or appointment of such officer as provided by Section 32, Article 3 of the Constitution?"

"TENTH. Is the constitutional prohibition against a change in salary or emolument after election or appointment as provided by Section 32, Article 3, to be construed as a limitation upon legislative authority to provide for mileage expenses of public officers after the election or appointment of such officer?"

It will be observed from what has been said that after his election and during McPherson's 1931-1932 term of office as Sheriff of Carbon County, the statutory rate per mile for the use of a privately owned automobile in official business was on February 18, 1931, reduced five cents a mile and that after his re-election and during his 1933-1934 term such rate per mile was again on February 15,1933, reduced additionally two cents a mile. The position taken in his behalf upon the foregoing facts and upon the constitutional and statutory law involved, as set out above, is that these changes in the law being made after his election and re-election, they could not affect him during the term he was serving at the time they were made. In support of this, it is insisted that a contrary view would render the several statutes unconstitutional, because it is said that the compensation allowed by these statutes for the use of a public officer's privately owned vehicle is an "emolument" within the meaning of that part of Section 32 of Article III of the State Constitution heretofore quoted.

On the other hand, plaintiff claims that the mileage allowance provided for in the statutes aforesaid is simply for the purpose of reimbursing the officer for expenses incident to performing the duties of his office, and that the amount thereof may be increased or de-

creased after the election or appointment of the officer, the constitutional provision last above mentioned, in nowise limiting legislative authority to make such change.

It is clear that the amount fixed by statute to be paid an officer for the use of his automobile while traveling on official business is not a part of his salary within the meaning of the constitutional provisions above cited, and no contention seems to be made to the contrary. Is it then an "emolument" of the sheriff's office thereunder? The following authorities will afford some help in supplying the answer to this inquiry.

In Reals, County Treasurer, v. Smith, 8 Wyo. 159, 56 Pac. 690, where a statute separated the office of County Assessor from that of Treasurer, thus taking away the duty thus imposed upon the latter of appointing deputy assessors, his salary not being disturbed, it was held that this did not decrease the County Treasurer's emoluments, the court saying:

"Emolument is generally defined as 'the profit arising from office or employment; that which is received as compensation for services, or which is annexed to the possession of office, as salary, fees, and perquisites; advantage; gain, public or private. Am. & Eng. Ency. L., 2d. ed., Vol. 10, p. 1204.

"The gain, profit, or advantage which is contemplated in the definition or significance of the word 'emolument,' as applied to officers, at least as the word is employed in the constitutional provision aforesaid, clearly comprehends, we think, a gain, profit, or advantage which is pecuniary in character."

Webster's International Dictionary, Second Edition (1935), defines the word "emolument" as "profit from office, employment or labor; compensation, fees or salary." The meaning, "advantage"; "benefit" is therein indicated as obsolete.

In Ware v. City of Battle Creek, 201 Mich. 468, 167 N. W. 891, L. R. A. 1918E, 675, it appeared that the salary of the city attorney of the defendant city was fixed by ordinance at $1200.00. The ordinance provided also that he should not be "entitled to any fees or perquisites of office in addition to his salary." Three months after plaintiff had entered upon the duties of that office the city council passed a resolution that he be allowed "$40.00 per month out of the general fund for office expenses." Payment not being made plaintiff brought suit to recover. Judgment went against him in the lower court. On review he contended that the sum thus allowed "for office expenses" was neither a fee nor a perquisite within the meaning of the language of the ordinance fixing the city attorney's salary. Upholding this view and reversing the judgment below, after citing authorities, the appellate court said in the course of its opinion:

"It seems to us plain, under the authorities above set forth, that the word 'perquisite' means some emolument or profit beyond the salary which was paid to the city attorney, and cannot be said to mean moneys which were allowed him for expenses, because there was no profit or emolument to him in the allowance for office rent, which he had to disburse."

Referring to the well-known prohibition frequently appearing in State Constitutions against increasing the compensation of officers during their terms, 46 C. J. 1027, Section 266, says:

"Appropriations to public officers not intended for the personal benefit of the officer to whom the allowances are made, but for the incidental expenses of the office, are not within such a prohibition."

Among the cases cited in support of the text is State v. Thomason, 142 Tenn. 527, 221 S. W. 491. It was there held that while under the State Constitution the

compensation of the members of the State Legislature could not be increased beyond the amount mandatorily fixed therein, an appropriation of $150.00 to legislators for a certain year "for stenographic work and other necessary expenses" was not invalid as transgressing the constitutional provision. The court took the position:

"That the expenses of public officers incurred in the performance of their official duties are distinct from and not included in the compensation allowed them, unless authoritatively so declared, is well established upon reason and authority, and the apparently uniform consensus of opinion in those cases wherein the question has been considered is to the effect that constitutional prohibitions against change in the compensation fixed for public officers are not intended to be construed as limitations upon legislative authority to provide for the expenses of such officials." (Citing many authorities.)

See also the subsequent case from the same jurisdiction of Peay v. Nolan, 157 Tenn. 222, 7 S. W. (2d) 815, 60 A. L. R. 408, where the principles announced in the earlier case were reaffirmed, and it was indicated that to sustain an appropriation in gross as an allowance for expenses rather than a forbidden increase of compensation, the same must be within such reasonable limits as to warrant a conclusion that it might be covered by a certified statement of expenses incurred.

In Macon County v. Williams, 284 Mo. 447, 224 S. W. 835, it was held that the lump sum of $1200.00 allowed to judges of the circuit courts to cover expenses "while engaged in holding any regular, special or adjourned term of court at any place in his circuit other than the place of his residence therein, or while engaged in going to and from any such place for the purpose of holding such terms of court," was not compensation in the constitutional sense, their salary being

fixed at $2000.00 annually. In line with what was said in the Thomason case, supra, the court remarked:

"This question, whether allowances to officers for expenses come within the meaning of the word 'compensation,' has arisen in several cases. In Wisconsin, under a constitutional provision somewhat analogous to ours, in so far as the question presented was concerned, it was held that a statute providing for a payment to each circuit judge of $400.00 per annum 'as and for his necessary expenses while in discharge of his duties' did not constitute additional 'compensation' in the constitutional sense. Milwaukee County v. Halsey, 149 Wis. loc. cit. 87, 136 N. W. 139. In McCoy v. Handlin, 35 S. D. loc. cit. 514, et seq., 153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046, under a more comprehensive constitutional provision than ours, the Supreme Court of South Dakota held that an allowance of $600 per annum to the Supreme Judges 'in consideration of expenses' was not in violation of the prohibition against increasing the compensation of judges. The court held that the salary provided could not be increased, but that the allowance of expenses, as such, did not have that effect."

Of similar import is the case of Christopherson v. Reeves, 44 S. D. 634, 184 N. W. 1015. It is true that these South Dakota cases have been subjected to criticism, but it would seem that a fair comment concerning them is made in Scroggie v. Scarborough, 162 S. C. 218, 160 S. E. 596, to the following effect:

"It is objected to these decisions that the members of the court had a personal interest in the outcome of the McCoy case, but we are not so much concerned with the possible motive of the members of the court in arriving at a conclusion as with the logic and force of the reasoning embodied in the opinion."

It may be noted further in this connection, that in considering a somewhat analogous question, viz., whether a federal judge who occupied a house belonging to the Government in the Panama Canal Zone should account

for the rent thereof, attention being especially directed to the provisions of the Adamson Act prohibiting a Canal Zone judge from receiving any "emolument" except his salary, the nonresident trial judge called in to decide the case relied quite strongly upon the opinion in McCoy v. Handlin, supra, and quoted from it *in extenso*. His opinion received the unqualified approval of the United States Circuit Court of Appeals for the Fifth Circuit (Smith v. Jackson, 241 Fed. 770) and subsequently on error to the National Supreme Court (Smith v. Jackson, 246 U. S. 388, 38 S. C. 353, 62 L. Ed. 788), on affirmance, Mr. Chief Justice White referred to it as "elaborate and careful."

The case of Scroggie v. Scarborough, supra, decided that an appropriation in a lump sum of $260.00 by the South Carolina General Assembly, and designated as expense money for each of its members, was not invalid as transgressing constitutional provisions forbidding an increase of the compensation of the legislators.

In Scharrenbroich v. Lewis and Clarke County, 33 Mont. 250, 83 Pac. 482, the case arose upon the following facts: The plaintiff as sheriff of the defendant county transported certain persons to the state insane asylum and reform school and traveled a certain number of miles in doing this. The statute in force at the time of his election allowed him the lump sum of ten cents per mile mileage. After he took office a law was passed allowing him his actual expenses. The difference between his actual expenses and the mileage traveled by him on the business above mentioned, computed at the ten cent rate, amounted to $95.05. His claim for this amount being disallowed, he sued and recovered a judgment. The county appealed the case. In the appellate court plaintiff pointed to a provision of the Montana Constitution identical in terms with the provisions of Section 32 of Article III of the Wyoming

Constitution quoted above, and argued as it is here at bar, that the original statute allowing the lump sum rate for expenses of mileage could not be changed during his term. Reversing the judgment below and holding the sheriff bound by the subsequent law, the court in considering the constitutional meaning of the words "salary" and "emolument" said this:

"We think it impossible to reconcile all the different definitions and attempted definitions of the words 'compensation' and 'emolument,' as used in the several sections of the statute and in the opinions of this court, unless we adopt what we believe has always been the intention of the Legislature, and the view of this court, that in respect of sheriffs the word 'salary' means what it ordinarily means—a fixed compensation, made by law to be paid periodically for services, whether there be any services actually rendered or not. The word 'emolument' is more comprehensive than 'salary.' But the Constitution says 'salary or emolument.' There are those who receive salaries, and there are officers who receive certain emoluments which are not salaries."

It is apparent from the quoted language of the several sections of Article XIV of our Constitution that the framers of that document had in mind that in this state too, there were officers who would not receive a "salary" but would receive "emoluments."

The case of Apple v. Crawford County, 105 Penn. St. 300, 51 Am. Rep. 205, decided in 1884, was one where a constitutional provision like that of Section 32, Article III, supra, was involved. The law under consideration in that case made the boarding of the prisoners in his custody one of the official duties of the sheriff, and, of course, obligatory. At the time the plaintiff entered upon the duties of his office as sheriff, the statute then in effect required the county to pay him the sum of fifty cents per day or $3.50 per week for boarding each prisoner confined in the county jail.

After his term of office commenced, the statute was repealed and a former law restored, which allowed the sheriff not to exceed $2.50 per week for this service. Plaintiff sued to recover the difference accruing over a stated period. Not succeeding in the trial court he brought error and obtained a reversal judgment in his favor in the reviewing court. Holding that the statutory amount required to be paid the officer for performing the service aforesaid was not a "salary" but that it was included within the meaning of the word "emolument," and hence could not be changed during the officer's term, the court announced its position thus:

"In Webster's Unabridged Dictionary the word 'emolument' is thus defined: 'The profit arising from office or employment; that which is received as a compensation for services, or which is annexed to the possession of office as salary, fees and perquisites; advantage; gain, public or private.' We think the word imports more than the word salary or fees, and because it is contained in the Constitution in addition to the word 'salary' we ought to give it the meaning which it bears in ordinary acceptation. By the definition above given it imports any perquisite, advantage, profit or gain arising from the possession of an office. *The service which it compensates is official service and is compulsory.*"

We have italicized the significant language of the opinion. In the case at bar the compensation would appear to be paid under the statutes cited supra, not for "official service," but for the use of a machine owned by the sheriff, and the use thereof is certainly not "compulsory."

In these material respects at least the Apple case differs from that before us. Supplementing this it may well be observed that the court in the Scharrenbroich v. Lewis and Clarke County case, supra, also said:

"We have not had any authority, except one, called

to our attention supporting any other views than those we have advanced above, and that case is Apple v. County of Crawford, 105 Pa. 300, 51 Am. Rep. 205. This case seems to depend largely upon the definition of the word 'emolument,' as found in the dictionaries. We cannot see wherein the dictionaries are opposed to the views hereinbefore set forth. We acknowledge that the word 'emolument' includes the meaning of 'gain,' 'profit,' 'compensation,' etc. But the intention of the Legislature must be considered in determining what is meant, not only by 'emoluments,' but who shall receive them. In this case we do not consider that the Legislature ever intended that the sheriff should make a cent either in traveling on business or feeding prisoners, whether the law allows 10 cents a mile or 'actual expenses.' We think that the Legislature probably understood that the expenses averaged about 10 cents a mile, including guards, dieting, transportation, etc., and that in some cases sheriffs saved something honestly, and in others they lost. But whether loss or gain, it was for the Legislature to say how much they should have to meet expenses."

The Apple case, supra, was especially stressed by counsel in McDaniel v. Levy Court, 5 Pennewill's Del. Rep. 240, 59 Atl. 865, where the question was whether a statute which had been enacted after his term of office began and which deprived the sheriff of the custody of prisoners, and so of the right to board them, was a constitutional exercise of power by the Legislature. The Delaware Constitution provided that "no law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment." Holding that the Legislature might legally do what it did, and while not resting its decision upon an interpretation of the State's fundamental charter provision above quoted, the court said:

"And while, therefore, we do not undertake to decide whether or no the fees and perquisites sued for by the plaintiff in error in this action are emoluments within the meaning of the Constitution, we may sug-

gest in passing that the present case differs in several particulars from the case of Apple vs. County of Crawford, 105 Pa. St. 300, upon which counsel for the plaintiff in error so confidently relied.

"It appears by the Pennsylvania case that the boarding of the prisoners was a duty imposed upon the Sheriff by law. 'The boarding of the prisoners,' said the Court, 'was certainly one of his official duties imposed upon him by law. The service which it (emolument) compensates is official service and is compulsory.' Under the law of the State of Delaware the Sheriff may board the prisoners or not as he pleases. It may be done by him or by the keeper of the jail. Rev. Code, 421.

\* \* \* \* \* \*

"Indeed, as we have intimated above, it is by no means certain that the removal of the prisoners from the custody of the Sheriff would diminish the emoluments of his office within the meaning of said Section 4 of Article 15 of the Constitution."

In Fox v. Lebanon Co., 4 Pa. Co. Ct. Rep. 393, having before it the provisions of the Constitution of Pennsylvania above mentioned, and citing the Apple case, supra, the court said: "The words 'salary or emoluments' have a broad meaning, and were apparently intended to cover every method by which a public officer is paid for his work." So holding, the court decided that an assessor elected before the passage of an act doubling the per diem pay of such officer was not entitled to the increased pay.

The question whether an item of travel fees, with other items for per diem fees and extra service should be included in the fee and emolument account of a federal district attorney, as belonging to the "fees, charges and emoluments" to which that officer was entitled by reason of the discharge of his official duties, was involved in the case of United States v. Smith, 158 U. S. 346, 15 Sup. Ct. 846, 39 L. Ed. 1011. The

federal statute provided that certain fees should be allowed district attorneys in addition to a stated salary. In that part of the act providing for fees was a provision that these attorneys should receive $5.00 per day while attending court and ten cents per mile for traveling from the place of their abode to the place of holding court, and a like sum per mile for returning. In 1882 the law was changed so that as it affected New Mexico and Arizona it read: "For the like services, double the fees hereinbefore provided"; but this amendment also limited the amounts receivable as fees and salaries by such district attorneys to $3500.00 annually. The plaintiff, a district attorney of the United States for the Territory of New Mexico, claimed the increase per diem and mileage, although if this mileage was regarded as a fee, his salary and fees would exceed the statutory limited amount. The Government insisted that the mileage was a fee or emolument and should be considered in computing the annual salary. In holding that the allowance was not a "fee, charge or emolument," but was intended simply to reimburse the officer for expenses, the Supreme Court of the United States said:

"While an allowance for travel fees or mileage is, by section 823, included in the fee bill, we think it was not intended as a compensation to a district attorney for services performed, but rather as a reimbursement for expenses incurred, or presumed to be incurred, in traveling from his residence to the place of holding court, or to the office of the judge or commissioner. The allowance of mileage to officers of the United States, particularly in the military and naval service, when traveling in the service of the government, is fixed at an arbitrary sum, not only on account of the difficulty of auditing the petty items which constitute the bulk of traveling expenses, but for the reason that officers travel in different styles, and expenses, which in one case might seem entirely reasonable, might in another be deemed to be unreasonable. There are dif-

ferent standards of traveling as of living, and while the mileage in one case may more than cover the actual expenses, in another it may fall short of it. It would be obviously unjust to allow one officer a certain sum for traveling from New York to Chicago, and another double that sum, and yet their actual expenses may differ as widely as that. The object of the statute is to fix a certain allowance, out of which the officer may make a saving or not as he chooses, or is able. And while, in some cases, it may operate as a compensation, it is not so intended, and is not a fee, charge, or emolument of his office within the meaning of section 834. It is much like the arbitrary allowance for the attendance of witnesses and jurors, which may or may not be sufficient to pay their actual expenses, depending altogether upon the style in which they choose to live."

We think it plain from the authorities cited above, that generally speaking, statutory compensation for expenses necessarily incurred in performing the duties of an office is neither salary nor an emolument of the office within the meaning of Section 32 of Article III of our State Constitution. Such compensation is merely to assure the officer that for the performance of his official duties alone, and not for the performance of such duties and the payment of expenses incident thereto, he will receive the salary provided by law therefor. Consequently the amount allowed by law for such expenses may be changed during the officer's term, without doing violence to the aforesaid constitutional provision.

In the case at bar, when by the law of 1921 and subsequent enactments of similar character, the State Legislature authorized the Sheriff to use his own automobile, as he might find it necessary or convenient in the performance of his official duties, and provided that he should be paid for that use at the several stated sums per mile, it was fixing what that body deemed a reasonable mileage rate to reimburse the

officer for such use and with no thought of adding to his salary or supplying an added emolument to his fees. The representative citizens of this State, who composed the several Legislatures which enacted these laws, knew that in the use of an automobile the owner thereof must pay for gasoline, grease and oil in order to make the machine operate at all. When the original law of this character was passed, they knew that our state highways, as they then existed, were hardly all that could be desired, and in consequence the use of an automobile on them took heavy toll in the upkeep of tires and other parts of the car. They realized that while an automobile could accomplish a great deal more in traveling than a team, yet it was as yet far from mechanically free from trouble, and that trouble of that kind usually meant expense. They knew that an officer operating his own car might suffer hazards and accidents, which would seriously damage his property, and they were aware as well that every time an owner used his automobile, whether in good weather or bad, whether on rough mountain roads or on level stretches of highway, this invariably resulted in depreciation of the value of its entire construction, body and mechanical parts alike. Some of these items—all of them expenses imposed upon a car owner by its use—were quite impossible of definite calculation in advance, or even after a trip from place to place had been made. It seems to us entirely proper for the Legislature, under such circumstances, to fix an arbitrary lump sum, which they thought would fairly and ordinarily reimburse both state and county officers for such use.

True, as suggested by Mr. Justice Brown in the Smith case, supra, an officer might "make a saving or not as he chooses, or is able." He might be exceptionally skillful and careful as a driver, and he might himself do a part, or all, of the necessary mechanical

or repair work required to keep his machine in running order. In our judgment it was not intended that he derive a profit from the use of his own car, but the allowed payment on that account was, as already intimated, solely an estimated recompense. From what appears in this record, we cannot say that the Legislature erred in fixing the rate it did, or that it was out of all proportion to the expenses undertaken to be met thereby, under the rule announced by some authorities. As highways and car constrution improved and car upkeep decreased, the Legislature evidently saw fit to reduce the mileage rate. This was an entirely reasonable view of the matter, as it seems to us, and one naturally to be expected. That the Legislature had the power to do this regardless of an officer's term, we entertain no doubt.

It would hardly be contended that if the law had authorized an officer to hire another person's automobile for use officially and provided for the officer's reimbursement in such case in the exact amount of the rental of the machine, that this sum should be regarded as an emolument of his office. In that event, as in the case at bar, if the officer in traveling ruined one or more tires or broke an axle, or some other part of the car, he could very easily have found himself confronted with not a profit but a loss through its employment. Reference has already been made to the fact that the use by the officer of his own car for traveling was not obligatory. Accordingly, we are unable to perceive that what the statute allowed him for the use of what he was not officially required to use should be considered an emolument of his office, which could not be altered during his term.

In reaching these conclusions, the endeavor has been made to keep in mind certain fundamental principles of construction, to-wit: That all statutes are presumed

to be constitutional and every reasonable doubt will be resolved in favor of their validity, State v. Snyder, 29 Wyo. 163, 212 Pac. 758; and that no statute will be so construed as to make it unconstitutional if such construction can be avoided, Houghton Bros. v. Yocum, 40 Wyo. 57, 274 Pac. 10.

In State v. Sheldon, 78 Neb. 552, 111 N. W. 372, it was held that the Governor of the State of Nebraska was authorized by law to use the executive mansion owned by the State without payment of rent, and that this statute was not in violation of a provision of the Constitution of that State, which, after prescribing the salary of the Governor, declared that he should not receive to his "own use any * * * * * * * * * perquisites of office or other compensation." The court, among other reasons for its decision, said that:

"The legislature has construed the provisions of the constitution to the effect that it had the right to provide an official mansion for the governor, and that he had the right to occupy it without contravening the constitutional provisions as to his compensation. That body has the right to construe the constitution, and if the language of that instrument is subject to two equally reasonable interpretations, if the legislature adopt one, the courts will not adopt the other."

In the matter before us, the Legislature, both in enacting and in changing the law of 1921 twice thereafter, designated each time its effective date without reservation as "from and after its passage." This would seem to indicate that the Legislature considered it had a legal right to make the changes effective immediately and regardless of official terms. The original act appears never to have been questioned as "increasing" any official's "emoluments." It will be recalled that the sheriff in this case apparently acquiesced in the changes made until the last nine months of the last year of his second term.

Our conclusion, therefore, is that a negative answer must be returned to the reserved questions quoted above. As already suggested, being of the opinion that these responses will dispose of all other propounded questions proper for this court to answer under the established rules governing procedure of this nature, further discussion becomes unnecessary.

KIMBALL, Ch. J., and BLUME, J., concur.