Robert H. SAUNDERS, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 11291.

United States Court of Appeals Third Circuit.

Argued June 8, 1954.

Decided Sept. 22, 1954.

Sydney A. Gutkin, Newark, N. J. (David Beck, Newark, N. J., on the brief), for petitioner.

C. Guy Tadlock, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Joseph F. Goetten, Spl. Assts. to the Atty. Gen., on the brief), for respondent.

Grover C. Richman, Jr., Atty. Gen. of New Jersey, Amicus Curiae.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

The taxpayer and petitioner, Saunders, since 1947 has been a trooper of the New Jersey State Police. A brochure, sent by the State of New Jersey to prospective applicants for employment as troopers, contains the following statement: "Your salary[:] While in training as a recruit, you receive $200 per month. Following graduation you advance to the annual minimum salary of a trooper, *which is $3,480 plus maintenance.* Annual increments of $180 are granted until you receive a maximum salary of $4,380 plus maintenance." (Emphasis added.) Having been accepted as a recruit, the taxpayer became a trooper, and in 1950, the taxable year in question, he was paid $3,605. This included $665 given to him in lieu of rations, an item to be discussed at more length hereinafter. During 1950 Saunders maintained a home and family at Millville, New Jersey.

The New Jersey State Police, a part of the Department of Law and Public Safety, was organized in 1921 pursuant to statutory authority. R.S.N.J. Title 53, §§ 53:1-1 et seq., N.J.S.A. Saunders enlisted, as we have indicated, in 1947, for the prescribed two year period and has re-enlisted at regular two year intervals ever since. A trooper of the State Police of New Jersey is under discipline somewhat analogous to that of the members of the armed forces of the United States. He may not withdraw from the force prior to the end of an enlistment without permission of the Superintendent of the State Police. If he does withdraw without permission he is guilty of a misdemeanor. The force is organized with a resemblance to military organization. The Superintendent has the rank of colonel, and is the commander of the force. Below him is the Deputy Superintendent who has the rank of major. The lower ranks include captain, lieutenant, staff sergeant, sergeant, and trooper. The State of New Jersey is divided into two regions. The taxpayer is employed in Region A. This region is divided into five districts, each headed by a lieutenant, and each district has three stations headed by sergeants to which are attached troopers ranging in numbers from five to twelve. All members of the force from the highest to the lowest take a solemn oath of office.

Every trooper is subject to call 24 hours a day, 7 days a week, and 52 weeks a year. Of the 720 hours in a thirty-day

month, each trooper under normal conditions is on active duty 390 hours. The 330 off-duty hours are comprised of 6 days a month off, plus 10 over-night passes of 15 hours each and 9 passes of 4 hours each. Except when on a day off, pass or vacation (of 2 weeks a year), Saunders must live at Mays Landing, New Jersey, the station to which he is assigned. He is not permitted to go to his home which is only 22 miles from that station. At the beginning of each month a schedule is posted for him. This is subject to change without notice and Saunders may not only have his time off changed but he may be required to work for more than the prescribed 390 hours per month if the circumstances should require it. His shifts vary and he may be on duty at any time of the day or night. He is subject to call every day of the year and, when on a day off, pass or vacation, must keep his station informed as to his whereabouts so that he may be summoned in case of an emergency. His duties include road patrol, patrol of rural farm areas, duties at the station house, and answering criminal complaints. Saunders may also, at the pleasure of his superiors, be assigned to an entirely new station at any time.

Prior to July 1, 1949, Saunders and the other troopers were supplied with meals at their stations at the expense of the State. But if their duties were such that they could not return to their stations for meals they would purchase meals elsewhere and be reimbursed for them. It took troopers such as Saunders about an hour to make the round trip from their patrol areas to their stations and a half hour to eat. This system was unsatisfactory because almost all the troopers would return to their respective stations at about the same time leaving the State practically unpatrolled for one and a half hours during each meal period. Efforts were made by the authorities to prevent this result but these were unsuccessful for if the troopers did not arrive promptly at the stations the food would be served to them cold. Saunders and the other troopers were not required by the United States to include the value of these meals in their gross income for tax purposes.

On July 1, 1949 the providing of meals was discontinued and each trooper was given a monthly allowance of $70 in cash in lieu of meals. This allowance for food was paid in semi-monthly payments of $35, and these payments were included in the salary checks of Saunders and the other troopers. The sum of $70 a month was insufficient to pay for each trooper's meals, and the balance was made up from the trooper's own pocket. Federal income taxes were withheld from the food allowance, but the allowance was not regarded or accounted for as compensation either in the budget of the New Jersey State Police or by the New Jersey State Civil Service Commission. The budget of the State Police carried the meal allowances as a separate book item from the salaries account. Details governing the payment of the daily allowances for meals " * * * for actual days on duty, excluding vacation and days on monthly duty leave * * * " were set out in Operations Order No. 57 of the New Jersey State Police. Paragraph six of the Order provides: "Meals may be procured by each individual at a suitable place in the nearest vicinity of assigned patrols, stations or headquarters. Station, District and Region Commanders will control the time allotted for meals."

The record clearly demonstrates that the reason why the supplying of meals at the respective stations of the troopers was discontinued and the cash allowance made in lieu of meals was to give better police protection and coverage to New Jersey citizens by not having the roads left unpatrolled and state areas unprotected at any time. An additional reason for the change was that the new system was cheaper for the State of New Jersey. The State no longer had to maintain kitchens and kitchen crews. When the new system went into effect the eating hours of the troopers were staggered so that roads in rural areas

were at no time completely unpatrolled and unprotected. The State Civil Service Commission was of the view that the new system was an improvement over the old.

The taxpayer, Saunders, and the Attorney General of New Jersey, who appears here *amicus curiae,* contend that the allowance was not nor was it ever intended to be a part of the troopers' compensation. They insist that the only difference between the old and new systems is that the cash was given directly to the troopers under the new system and prior to its institution the meals were furnished to them. They contend that the new system was inaugurated for the benefit and convenience of the State of New Jersey.

Two questions were presented to the United States Tax Court and both were decided adversely to the taxpayer. See 21 T.C. 630. The first was: Whether the cash payments which the taxpayer received from the State to defray the cost of meals purchased while on duty must be included in gross income under Section 22(a) of the Internal Revenue Code, 26 U.S.C. § 22(a) (1946 ed.) [1]; and, second: If the payments must be included, whether the amounts expended by the taxpayer for meals, while on duty, were deductible as traveling expenses "while away from home in the pursuit of a trade or business" within the meaning of Section 23(a) (1) (A), or whether the amounts represent non-deductible personal or living expenses within the meaning of Section 24(a).

Saunders argues that the allowance paid him should not be included in his gross income as compensation because it is furnished for the convenience of his employer within the meaning of Section 29.22(a)–3 of Regulations 111, which provides in part: "If a person receives as compensation for services rendered a salary and in addition thereto living quarters or meals the value to such person of the quarters and meals so furnished constitutes income subject to tax. If, however, living quarters or meals are furnished to employees *for the convenience of the employer,* the value thereof need not be computed and added to the compensation otherwise received by the employees." (Emphasis added.)

Although the convenience of the employer rule itself has an extensive history, the rule as presently applied is primarily based on this regulatory provision which by its terms refers only to living quarters and meals furnished in kind. Nevertheless, the rationale of the rule should make it applicable to determine the extent of gross income either when quarters and meals are furnished in kind or cash is paid in lieu thereof. Although there are situations where different tax consequences depend upon whether a receipt is in cash or in kind (i. e., § 112(b) (1) I.R.C., 26 U.S.C. (1952), exchanges of property of like kind), a determination of the amount of compensation of an employee is not one of those situations inasmuch as statutory Section 22(a) itself provides that " '[g]ross income' includes * * * compensation * * * of whatever kind and in whatever form paid * * *." And regulatory Section 22(a)–3, quoted above, itself seems to be intended to insure that compensation in the form of meals and quarters is treated the same as a cash compensation. Admittedly, the payment of cash to an employee is normally compensatory and probably more obviously so than a payment in kind. Nevertheless, just as an employee is often furnished tangible property which cannot be regarded as compensation, an employee may be furnished cash which is not compensation. In the instant case, cash was furnished Saunders in advance for a particular purpose, viz., payment for meals, and it is an established fact

[1]. "§ 22. Gross income—(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid * * *."

that the entire amount furnished was so expended but it does not automatically follow that the cash received was compensation. In the past, the Bureau has recognized that cash received by an employee for similar purposes may not be compensation: in O.D. 11, 1 Cum.Bull. 66 (1919), it was held that an American Red Cross employee receiving maintenance but no pay should return as income only the excess of the amount received over his actual living expenses; and in O.D. 514, 2 Cum.Bull. 90 (1920), it was ruled that supper money furnished an employee working after regular hours and not considered as compensation was furnished for the convenience of the employer and was not taxable. Likewise, the courts have considered maintenance furnished in kind and in cash on the same basis for determining an individual's taxable compensation. In Jones v. United States, 1925, 60 Ct. Cl. 552, it was held that neither the value of living quarters furnished or cash in lieu of quarters paid an army officer were income; and citing the Jones case, it was stated in Bercaw v. Commissioner, 4 Cir. 1948, 165 F.2d 521, at page 524: "This conclusion [that payments by an army officer for meals and 'striker' service are not deductible for tax purposes] is inescapable when it is remembered that this officer has been paid commutation of quarters and a subsistence allowance, both of which allowances are not considered as income for the purposes of taxation."

Thus, because the result in this case should not be dependent on whether meals are furnished in cash or in kind, we may refer to the principle of the convenience of the employer rule in deciding the classification of this rations allowance just as we may when the meals themselves are furnished.

In making reference to the convenience of the employer rule, note the illuminating history of the rule which begins with the early years of the income tax. In 1919, the Bureau ruled that the board and lodging of seamen were furnished for the convenience of the employer and were therefore not includible in the gross income of the seamen. O.D. 265, 1 Cum.Bull. 71. In 1920, the existing income tax regulations were amended by T.D. 2992, 2 Cum.Bull. 76, to afford some recognition to the rule by inserting the following provision: "When living quarters such as camps are furnished to employees for the convenience of the employer, the ratable value need not be added to the cash compensation of the employee, but when a person receives as compensation for services rendered a salary and in addition thereto living quarters, the value to such person of the quarters furnished constitutes income subject to tax." Subsequently, in other ways the government recognized a broader applicability of the rule than that indicated by the regulation. See, e.g., O.D. 814, 4 Cum.Bull. 84 (1921) (Rule applied to exclude lodging and sustenance furnished fishing and canning employees). And in O.D. 915, 4 Cum.Bull. 85 (1921), the criterion for its application was expressed, in particular reference to quarters and meals of hospital employees, when it was said that their value was not to be included as income if the employees were "required to accept" them in the performance of their duties. Similarly, in regard to the room and board of domestics, this was the criterion applied. See I.T. 2253, V–1 Cum.Bull. 32 (1926).

The rule as thus developed was accepted judicially and first applied in Jones v. United States. In that case an army officer had been required to live in government quarters for the first part of the taxable year and then for the latter part of the year when transferred to a new post where government quarters were not available he had received a cash commutation in lieu of quarters. The court held that neither the value of the government quarters or the commutation in lieu of quarters was taxable compensation, and 60 Ct.Cl. at page 575 of its opinion the court stated albeit quite generally the rationale of its decision: "*If the nature of the services require the furnishing of a house for their*

*proper performance, and without it the service may not properly be rendered,* the house so furnished is part of the maintenance of the general enterprise, an overhead expense, so to speak, and forms no part of the individual income of the laborer." (Emphasis added.)

By Mimeo 3413, V–1 Cum.Bull. 29 (1926), the subsistence allowance of army officers was also ruled not to be income. And in Article 53 of Regulations 77 to the 1932 Act a provision was included embodying the holding of the Jones case: "The value of quarters furnished to the * * * officers * * * and enlisted personnel of the Army, Navy, Coast Guard, Coast and Geodetic Survey, and Public Health Service, or amounts received by them as commutation of quarters are to be excluded from gross income." This provision has been continued in the regulations so as presently to be a part of Section 29.22(a)–3 of Regulations 111. The older regulatory provision of 1920 stating the employer's convenience rule only in the context of "living quarters" was then broadened by T.D. 4965, 1940–1 Cum. Bull. 13, to its current form, specifying that the value of "living quarters or meals" is not to be taxable if "furnished to employees for the convenience of the employer".

In the context of this background and these regulatory provisions, some difficulty was experienced in the application of the rule, and in Mimeo 6472, 1950–2 Cum.Bull. 15, the government discussed the criterion for its application: "The 'convenience of the employer' rule is simply an administrative test to be applied only in cases in which the compensatory character of such benefits is not otherwise determinable. It follows that the rule should not be applied in any case in which it is evident from the other circumstances involved that the receipt of quarters or meals by the employee represents compensation for services rendered." The intended effect of this pronouncement was then stated in Special Ruling, August 2, 1951, 1951 CCH Federal Tax Service ¶ 6191: "The principles

set forth in Mimeograph 6472 do not abolish the 'convenience of the employer' rule and do not represent any great change in the established policy of the Bureau, although it is conceded that such policy was previously not well known and was widely misinterpreted." That the requirements of the rule as originally revealed by the Jones case were not different was made certain by the Special Ruling's approval of paragraph 3, Mimeo 5023, 1940–1 Cum.Bull. 14, insofar as it sets out the "basic qualifications necessary to comply with such [convenience of the employer] test." Paragraph 3 of Mimeo 5023, in thus setting out the "basic qualifications", provided that meals and quarters were furnished for the convenience of the employer and were not compensation if the employee was " * * * required to accept such quarters and meals in order to perform properly his duties. For example, if an employee is subject to immediate service at any time during the 24 hours of the day [and night] and, therefore, cannot obtain quarters or meals elsewhere without material interference with his duties and on that account is required by the employer to accept quarters or meals furnished by the employer, the value thereof need not be included in the gross income of the employee. (See O.D. 915, 4 Cum.Bull. 85 (1921) )."

Thus the criterion for determining whether quarters, meals, or allowances therefor furnished an employee are taxable income is clearly enough indicated for application in this case. First, as specified by Mimeo 6472, it should be determined whether "it is evident from the other circumstances involved that the receipt of quarters or meals by the employee represents compensation for services rendered." It is our conclusion that in this case it is not "evident", considering all the circumstances, that the meal allowance was paid Saunders as compensation. The food allowance was included in the semimonthly salary checks, federal income taxes were withheld, and the brochure

advertising the salary of State troopers seemed to refer to the maintenance as salary. The Tax Court, however, found that the rations allowance "was not regarded or accounted for as compensation, either in the State Police Budget or by the State Civil Service Commission (which body determines the salary ranges for troopers). Rather, it was considered payment in lieu of rations." As necessary, proper adjustments were made in the rations allowance so that it would include only those meals eaten while on duty. Although the intent and practice of the State authorities is admittedly not binding in determining the tax due the United States, see, e. g., United States v. Pelzer, 1941, 312 U.S. 399, 402–403, 61 S.Ct. 659, 85 L.Ed. 913, this does seem relevant in deciding whether "it is evident * * * that the * * * quarters or meals * * * represents compensation." When in the past meals themselves had been furnished their value was not taxed, and the government presently makes no claim that the value of the quarters being furnished are taxable compensation.

█ Since it is not "evident" to us that the rations allowance was furnished as compensation, we should next determine, as indicated by Mimeo 5023, whether Saunders was "required to accept such * * * meals in order to perform properly his duties" and thus whether the rations allowance was furnished for the convenience of the employer so as not to be taxable. As has been noted, Saunders was required to live at the Mays Landing station, where he had previously been required to take meals. The system of furnishing an allowance in lieu of meals was then instituted by the State because of advantages to the State. Unless special permission to eat at home was obtained, Saunders was required to eat at public restaurants in his patrol area designated by the State at times designated by the State. On these facts found by the Tax Court, we conclude that Saunders was required to take his meals on the basis of this system and thus as a practical matter was compelled to accept the rations allowance for the convenience of his employer and that the allowance was not income taxable to him.

The situation here does not seem distinguishable from that in the Jones case, supra, where quarters and commutation of quarters were held not to be taxable income. The status of that army officer and his quarters and of this State trooper and his meals does not seem significantly different, and as in that case there was no existing regulation governing the inclusion or exclusion of commutation of quarters, there is in this case no regulatory provision controlling the taxability of commutation of meals. In Van Rosen v. Com'r, 1951, 17 T.C. 834, the court considered the Jones decision and said at pages 839–840 that "while the Jones case is authority for the exclusion from gross income by military personnel of cash allowances made to them for subsistence and quarters, it does not, in our opinion, require or justify an extension of the rule therein to similar allowances made to civilian personnel." Taxpayer Van Rosen was a civilian employee of the Army Transportation Corps serving as a master of a Liberty ship being converted to a hospital vessel in a Brooklyn shipyard. During the conversion, the taxpayer received a cash allowance in lieu of quarters and subsistence, and he lived at his permanent abode, which was located only forty blocks from the shipyard, and ate his meals where he wished. While living at home, the taxpayer was subject to call at all times. After referring, at pp. 837–838, to the "convenience of the employer" rule as a "catch phrase" to describe a tax result favorable to the employee where subsistence and quarters are furnished and after discussing prior pertinent cases, the court summarized a situation in which the rule should be applicable as follows: "In other words, though there was an element of gain to the employee, in that he received subsistence and quarters which otherwise he would have had to supply

for himself, he had nothing he could take, appropriate, use and expend according to his own dictates, but rather, the ends of the employer's business dominated and controlled, just as in the furnishing of a place to work and in the supplying of the tools and machinery with which to work. The fact that certain personal wants and needs of the employee were satisfied was plainly secondary and incidental to the employment." The court then concluded that Van Rosen did not come within that definition of the rule and that the cash allowances were taxable income to him. Saunders, on the other hand, does come within that statement of the rule, just as did Jones, so that an exclusion from gross income is proper. Thus, we choose to utilize this statement as the criterion for the application of the rule, rather than rely on the artificial distinction, indicated in the Van Rosen opinion, between "military" and "civilian" personnel.

In Hyslope v. Com'r, 21 T.C. 131 however, the Tax Court apparently did rely on this latter distinction in holding that reimbursement paid an Indiana State trooper for meals while on duty was income and that the amounts so expended were nondeductible personal expenses. Nevertheless, the facts of that case may justify that result without relying on any distinction between the civilian and the military. The record in that case shows that Hyslope lived at home and usually took at least one meal there and that the places and times for eating while on duty were not prescribed in the same manner as they were for Saunders in New Jersey. Consequently, the facts of that case do not seem to compel a similar result here inasmuch as Hyslope was simply not required for the convenience of his employer to submit to an eating system such as was prescribed for Saunders. If, however, this distinction be too slight to be operable, with all deference to the Tax Court, we do not consider the Hyslope precedent of too great weight in view of Jones v. United States.

Finally, in arguing that the rations allowance paid Saunders in 1950 was taxable income, the government points to the fact that Section 120 of the Internal Revenue Code of 1954, H.R. 8300, 83d Cong., 2d Sess., applicable to taxable years beginning after December 31, 1953, contains an express exclusion of statutory subsistence allowances for individuals employed as state police officers. In its report concerning this section of the new code, the House Ways and Means Committee did say at p. 18 of H.Rep. No. 1337, 83d Cong., 2d Sess.: "There is no comparable exclusion under existing law. Your committee believes that this exclusion is desirable because State police officers are required to make frequent trips away from their posts of duty. Under present law these expenses cannot be deducted if the police officer is to use the standard deduction." This report of the Committee indicates that the proposed exclusion is intended to afford relief to policemen such as Hyslope whose allowance has been determined to be compensation but it is not necessarily an indication that the allowances of all policemen are compensatory. At any rate, the proposal of the new section does not convince us that the statute applicable in 1950 was intended to include as taxable compensation the rations allowance received by Saunders. "The general rule is that later statutes may not be used as an aid in the interpretation of earlier acts * * *. It is the legislative intent at the time of enactment and not its afterthoughts which should be controlling." 1 Mertens, Law of Federal Income Taxation § 3.28, pp. 114 and 116.

Because of our decision, it is unnecessary to consider the other points argued on appeal.

The decision of the Tax Court will be reversed.