Gideon B. and Audrey J. WILLIAMSON, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15208.

United States Court of Appeals Eighth Circuit.

July 14, 1955.

Martin B. Dickinson, Kansas City, Mo., for petitioners.

L. W. Post, Sp. Asst. to the Atty. Gen., (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and I. Henry Kutz, Sp. Assts. to the Atty. Gen., were on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the Tax Court of the United States which determined

a deficiency in petitioners' income tax for the year 1949 in the amount of $166.00. Petitioners Gideon B. and Audrey J. Williamson are husband and wife and at all times pertinent to the issues here involved petitioner Gideon B. Williamson was and now is a duly ordained minister of the gospel. Petitioners for the year 1949, according to their usual practice, prepared and filed a joint income tax return but we shall refer to Gideon B. Williamson as the taxpayer. During the year in question Gideon B. Williamson was a general superintendent of the Church of the Nazarene and as such was a member of the Board of General Superintendents which is the governing body for the associated Churches of the Nazarene throughout the world. His compensation was fixed and determined by action of the governing body of the church as evidenced by the adoption of a resolution of that body which so far as here pertinent provided as follows:

"* * * that the salary of each of our General Superintendents be $5,200 per year with a traveling expense allowance of $2,750 per year and $1,000 a year for house allowance, and that the General Board be authorized to make adjustments in the interim of the General Assembly."

Pursuant to this action Gideon B. Williamson received from the Church of the Nazarene in 1949 a house allowance of $999.96 in cash. The governing body of the Church of the Nazarene did not attempt to furnish him with a residence for occupancy during the time here involved but petitioners owned a home in Kansas City, Missouri, purchased by them in 1946 and they continued to occupy that home during the year 1949. At the time of the purchase of the home by petitioners they executed a purchase money mortgage in the sum of $9,000.00 and in the year 1949 they paid upon this purchase money mortgage the sum of $339.26 as interest and $740.93 on principal and in addition paid taxes amounting to $152.51 and insurance in the amount of $41.40. The items of interest on the mortgage, city tax, state and county taxes were taken as deductions by the petitioners on their 1949 income tax return. The fair rental value of the petitioners' residence for 1949 was in excess of $1,000.00. Petitioners reported the house allowance in their income tax return for 1949 but excluded it in computing their gross income. The commissioner determined that the house allowance was not excludable from petitioners' gross income within the meaning of section 22(b) (6) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 22(b) (6), and thereupon determined a deficiency in the sum of $166.00 in petitioners' 1949 income tax. From this determination of a deficiency by the commissioner the taxpayer filed a petition with the Tax Court of the United States for a redetermination of the claimed deficiency. The Tax Court sustained the commissioner and petitioners here seek review of that decision.

There is no substantial dispute in the evidence and the single question presented by this petition to review is whether the house allowance here involved constituted part of taxpayer's gross income under the provisions of section 22(b) (6) of the Internal Revenue Code of 1939. This statute so far as here pertinent provides as follows:

"§ 22. Gross income

* * * * * *

(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * *

(6) Ministers. The rental value of a dwelling house and appurtenances thereof furnished to a minister of the gospel as part of his compensation; * * *."

It is to be observed that the terms of taxpayer's employment fixed his salary at $5,200.00, his traveling expense allowance at $2,750.00 and his house allowance at $1,000.00 per year. Manifestly, there was in the minds of the parties

to this transaction a difference between money paid taxpayer as salary and money paid him as house allowance. This was paid in lieu of furnishing a house, which apparently his employer recognized as its obligation. He was simply paid $1,000.00 for the use and occupancy of his home in lieu of furnishing him a home in kind. It was not intended to be nor did it in fact become any part of his income. Taxpayer urges that this contention is supported by the terms of his employment, by the above quoted statute and by the following authorities: MacColl v. United States, D.C.Ill., 91 F.Supp. 721; Conning v. Busey, D.C.Ohio, 127 F.Supp. 958; Jones v. United States, 60 Ct.Cl. 552; Saunders v. Commissioner of Internal Revenue, 3 Cir., 215 F.2d 768; and urges that in the instant case three judges of the Tax Court dissented. It is conceded that the case of MacColl v. United States, supra, is on "all fours" with the instant case. In that case the district judge held as a matter of law that the house allowance paid the minister of the gospel was excluded from gross income under section 22(b) (6) of the Internal Revenue Code of 1939. No appeal was taken by the government from that decision and it was followed in Conning v. Busey, supra. In Jones v. United States, supra, an army officer was furnished public quarters part of the year and was paid commutation for part of the year. The commissioner contended that both items should be included in plaintiff's gross income but the court held against the commissioner on both branches of the case. The argument that this case is distinguishable because no specific tax exempting statute was involved is, we think, without merit. If the house allowance was simply paid to and disbursed by the taxpayer in this case for the purposes designated in his terms of employment then it never became a part of his gross income. In Saunders v. Commissioner of Internal Revenue, supra [215 F.2d 771], the court considered a monthly allowance of $70.00 in cash in lieu of meals. It was there contended that this allowance was in-

cludable in the taxpayer's gross income. In holding against this contention the court among other things said:

"Although the convenience of the employer rule itself has an extensive history, the rule as presently applied is primarily based on this regulatory provision which by its terms refers only to living quarters and meals furnished in kind. *Nevertheless, the rationale of the rule should make it applicable to determine the extent of gross income either when quarters and meals are furnished in kind or cash is paid in lieu thereof.* [Emphasis supplied.] * * * Admittedly, the payment of cash to an employee is normally compensatory and probably more obviously so than a payment in kind. Nevertheless, just as an employee is often furnished tangible property which cannot be regarded as compensation, an employee may be furnished cash which is not compensation. In the instant case, cash was furnished Saunders in advance for a particular purpose, viz., payment for meals, and it is an established fact that the entire amount furnished was so expended but it does not automatically follow that the cash received was compensation. * * * Likewise, the courts have considered maintenance furnished in kind and in cash on the same basis for determining an individual's taxable compensation. In Jones v. United States, 1925, 60 Ct.Cl. 552, it was held that neither the value of living quarters furnished or cash in lieu of quarters paid an army officer were income; and citing the Jones case, it was stated in Bercaw v. Commissioner, 4 Cir., 1948, 165 F.2d 521, at page 524: 'This conclusion (that payments by an army officer for meals and "striker" service are not deductible for tax purposes) is inescapable when it is remembered that this officer has been paid commutation of quarters and a subsistence allowance, *both of which al-*

*lowances are not considered as income for the purposes of taxation.' "* (Emphasis supplied.)

In the instant case the payment here involved was for a house allowance and was expended for that purpose. If the convenience of the employer rule may be invoked then the rationale of the rule as stated in Saunders v. Commissioner of Internal Revenue, supra, should apply whether the house is furnished in kind or cash is paid in lieu thereof. The employer in the instant case instead of furnishing the taxpayer a home paid him a house allowance. This was manifestly for the convenience of the employer.

The Supreme Court of South Dakota in McCoy v. Handlin, 35 S.D. 487, 153 N.W. 361, L.R.A.1915E, 858, and State ex rel. Payne v. Reeves, 44 S.D. 568, 184 N.W. 993, 996, was called upon to decide whether or not certain statutory allowances made to certain constitutional state officers constituted additional compensation, perquisites or emoluments in addition to their salaries. The salaries of the Supreme Court Judges of South Dakota were at that time definitely fixed by provision of the state constitution and by the same section of the constitution it was provided that " '* * * no such judge shall receive any compensation, perquisite or emoluments for or on account of his office in any form whatever, except such salary: * * *.' " Art. 5, § 30. The judges were required to hold the terms of the Supreme Court at the capital but they were not required to reside at the capital. They in fact all actually resided at the capital although the capital was not the legal residence of any of them. The state legislature passed an act providing that:

"Whenever a judge of the Supreme Court whose legal residence shall be at some place other than the state capital shall have changed his place of actual residence to the capital, there shall be paid to such judge, in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, and the expenses of traveling to and from such legal residence the fixed sum of one hundred and fifty dollars for each month, payable upon the certified voucher of such judge filed in the office of the State Auditor."

It was contended that this statute was violative of the above quoted provision of the state constitution. The court, however, held that the payment did not increase the salary of the judges but was simply an allowance for their maintenance and in the course of the opinion in McCoy v. Handlin, supra [35 S.D. 487, 153 N.W. 373], said:

"If the judges of this court continued to reside at the places of their legal residence, no question, under any authority, could be raised as to the constitutionality of a law which appropriated money to reimburse them for their actual expenses incident to their travel to and from, and for their hotel bills while at, the capital. Such an allowance would leave to the judges clear, as compensation for their official services, the salary provided by law, and no one could, and we apprehend no one would, say that they received perquisites or emoluments."

As noted in the opinion in State ex rel. Payne v. Reeves, supra, the decision in McCoy v. Handlin, supra, has become a leading case on this subject cited with approval and followed in Smith v. Jackson, 5 Cir., 241 F. 747; State ex rel. Weldon v. Thomason, 142 Tenn. 527, 221 S.W. 491 and Macon County v. Williams, 284 Mo. 447, 224 S.W. 835. In State v. Thomason, supra, [142 Tenn. 527, 221 S.W. 494] the Supreme Court of Tennessee in the course of its opinion said:

"That the expenses of public officers incurred in the performance of their official duties are distinct from and not included in the compensation allowed them, unless authoritatively so declared, is well established upon reason and authority, and the apparently uniform consensus of

opinion in those cases wherein the question has been considered is to the effect that constitutional prohibitions against change in the compensation fixed for public officers are not intended to be construed as limitations upon legislative authority to provide for the expenses of such officials."

In Macon County v. Williams, supra, [284 Mo. 447, 224 S.W. 836] the court quotes from the opinion of Federal District Judge Clayton as follows:

"In considering a similar question with respect to a claim that a federal judge, who occupied a house belonging to the government in the Canal Zone, must account for the rent thereof, Judge Clayton (Smith v. Jackson [5 Cir.], 241 F. loc. cit. 770, 154 C.C.A. [449] 472) quotes from the opinion in the case of McCoy v. Handlin, as follows:

" 'There it was said: "It is clear that the Legislature did not intend, in the enactment of such legislation, to increase the salaries of the judges, or to grant them any perquisites or emoluments for the discharge of their duties, but only intended to assure them, in so far as possible, that for the performance of their official duties alone, and not for the performance of such duties and the payment of the expenses incident thereto, they should receive the salaries provided by law for the performance of such duties." ' "

Judge Clayton's decision was affirmed by the Circuit Court of Appeals for the Fifth Circuit in 241 F. 747 and on appeal to the Supreme Court of the United States was again affirmed in 246 U.S. 388, 38 S.Ct. 353, 62 L.Ed. 788.

Convinced as we are that it was not the intent nor purpose of Congress that a house allowance in lieu of the rental value of a dwelling house and appurtenances thereof furnished to a minister of the gospel should be included in his gross income, the decision of the Tax Court will be reversed.