UNITED STATES of America, Appellant,

v.

Richard D. MORELAN and Margaret Morelan, Appellees.

UNITED STATES of America, Appellant,

v.

Karl W. CHRISTEY, Appellee.

Nos. 18041, 18042.

United States Court of Appeals Eighth Circuit.

Feb. 4, 1966.

**200**

Karl Schmeidler, Atty., Tax Div., Dept. of Justice, Washington, D.C., made argument for appellant, and Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks and David O. Walter, Attys., Dept. of Justice, Washington, D.C., and Miles W. Lord, U. S. Atty., and Sidney P. Abramson, Asst. U. S. Atty., Minneapolis, Minn., were with him on the brief.

Peter J. Ruffenach, Minneapolis, Minn., made argument and filed brief for appellees.

Before VOGEL, Chief Judge, and BLACKMUN and GIBSON, Circuit Judges.

VOGEL, Chief Judge.

In these cases the District Court held that two members of the Minnesota State Highway Patrol were entitled to refunds of disputed federal income taxes paid by them on a $3.00 per day subsistence allowance received from the State of Minnesota during the years in question. The opinion of Chief District Judge Devitt, before whom the cases were tried, is published at 237 F.Supp. 879. We affirm.

The Minnesota State Highway Patrol is a state agency with a total complement of 336 men. During the period from 1959 to 1962, the years in question, the State of Minnesota was divided into nine districts by the Highway Patrol with each district being divided into several stations. Plaintiff-appellee Morelan was assigned to and lived within the station area at Paynesville. Plaintiff-appellee Christey was assigned to and lived within the Excelsior station area.

The Patrol, organized along military lines, is responsible for enforcing state traffic laws, arresting offenders, directing and controlling traffic, providing assistance to the general public, investigating accidents and administering first aid to the injured. The Patrol also cooperates with other law enforcement agencies in pursuing and apprehending violators of the criminal laws.

The patrolmen, who are required to dress in maroon military-type uniforms and to maintain a smart appearance, are employed under state civil service laws and regulations and receive a statutorily fixed salary as well as the $3.00 per working day subsistence allowance, the taxing of which is in question. The subsistence allowance is and was intended as reimbursement for meals purchased while on duty, parking meter charges, cleaning of uniforms, purchases of ties, socks, black shoes and shoe polish, and the cost of a telephone at the patrolman's home. The subsistence allowance was instituted in 1934 to avoid the expenses involved in making out and processing vouchers showing actual expense incurred, which was the method previously used for reimbursement. When a patrolman is as-

signed to a part of the state outside of his regular patrol area on special detail, etc., he goes on a regular expense account in lieu of the $3.00 daily subsistence allowance.

Patrolmen are subject to call 24 hours a day, though a normal tour of duty is between 8½ and 9 hours and on up to 12 hours a day. During the years in question appellees Morelan and Christey both averaged two-thirds of their working time at night—i. e., after 5:30 p. m. in the afternoon. Both men also worked in their homes to some extent as, for example, when they were interviewed by attorneys or insurance adjustors concerning accidents they had investigated. While on patrol duty the appellees covered between 140 and 300 miles per day throughout their station areas.

While taking meals on duty patrolmen were assigned specific eating times and were required to eat in a respectable public restaurant, which did not serve liquor and which was adjacent to a highway. Before eating, a patrolman had to advise station headquarters of the name and phone number of the restaurant where he would be. At least occasionally patrolmen, including appellees, had to interrupt their meals, following regulations, to answer an accident call, to deal with the general public, or to give road condition advice. Judge Devitt found from the evidence that the Highway Department's eating regulations were instituted " * * to insure public safety and obedience to law through the physical presence of the officers in uniform and to facilitate their availability to the public for the reporting of accidents and the seeking of information with reference to the traffic and motor vehicle laws of the State." 237 F.Supp. at 881.

On appeal the government has chosen to confine itself only to issues concerning the taxability of the reimbursement for meals taken by the appellees and other patrolmen while on duty. The government does not now choose to attack any part of the reimbursement which would cover uniform costs, parking meter charges and the cost of maintaining a telephone at the patrolman's home. Therefore, the decision as to reimbursement for those latter matters may stand without further discussion.

The first of the two points raised by the government on these appeals is that the court erred in failing to hold that appellees " * * * should include in their taxable incomes the cash payments received by them, which were denominated as a subsistence allowance". The government's second point is that if the payments are includable in gross income, the court " * * * erred in failing to hold that the cost of the taxpayers' meal or meals eaten while working constitutes a nondeductible personal expense and not a deductible expense." We disagree with both of the government's contentions.

As defined in the 1954 Internal Revenue Code (hereafter Code) at 26 U.S.C.A. § 61:

"Except as otherwise provided in this sub-title, gross income means all income from whatever source derived * * *."

However in §§ 101 through 122 of the 1954 Code, 26 U.S.C.A. §§ 101–122, Congress has provided for certain exclusions from gross income. Insofar as pertinent herein, § 119 provides:

"There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—

(1) in the case of meals, the meals are furnished on the business premises of the employer. * * *.

*     *     *     *     *     *

"In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation."

Counsel for the government, relying on § 1.119–1 of the Income Tax Regulations,[1] Congressional intent and the wording of § 119 itself, contend that the § 119 exclusion is not applicable unless " * * * the meals are furnished to an employee (1) primarily for the convenience of the employer; (2) on the business premises of the employer, and (3) in kind".

■ The evidence amply supports Judge Devitt's findings of fact and conclusions herein that such tests necessary for the exclusion were met. Such findings may not be overturned unless clearly erroneous. Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218. The meals were taken "for the convenience of the employer" since the State of Minnesota set up meal schedules and directed only certain places where the patrolmen could eat in the interests of keeping the patrolmen on alert and available at all times to maintain the public safety. The interests of public safety involved herein are not present to such a great degree in other employer-employee relationships, and thus we believe the government errs when it states in its brief that " * * * the taxpayers' situation fundamentally is no different from that of most employed persons who are required to eat their meals during working hours in the general vicinity of where they work". Most other employees are not on call to their employer during a meal time to the extent appellees are on call herein to the State of Minnesota. Furthermore, the evidence abundantly supports a finding that the situation clearly falls within § 1.119–1(a)(2)(ii) (a) of the Commissioner's own Income Tax Regulations, wherein it is provided:

"Meals will be regarded as furnished for a substantial noncompensatory business reason of the employer when the meals are furnished to the employee during his working hours to have the employee available for emergency call during his meal period. In order to demonstrate that meals are furnished to the employee to have the employee available for emergency call during the meal period, it must be shown that emergencies have actually occurred, or can reasonably be expected to occur, in the employer's business which have resulted, or will result, in the employer calling on the

---

1. § 1.119–1 of the Regulations, as amended by T.D. 6745, 1964–2 Cum.Bull. 42, provides in pertinent part:

"(a) Meals—(1) In general. The value of meals furnished to an employee by his employer shall be excluded from the employee's gross income if two tests are met: (i) The meals are furnished on the business premises of the employer, and (ii) the meals are furnished for the convenience of the employer. The question of whether meals are furnished for the convenience of the employer is one of fact to be determined by analysis of all the facts and circumstances in each case. If the tests described in subdivisions (i) and (ii) of this subparagraph are met, the exclusion shall apply irrespective of whether under an employment contract or a statute fixing the terms of employment such meals are furnished as compensation.

* * * * * *

"(c) Rules. (1) For purposes of this section, the term 'business premises of the employer' generally means the place of employment of the employee. For example, meals and lodging furnished in the employer's home to a domestic servant would constitute meals and lodging furnished on the business premises of the employer. Similarly, meals furnished to cowhands while herding their employer's cattle on leased land would be regarded as furnished on the business premises of the employer.

"(2) The exclusion provided by section 119 applies only to meals and lodging furnished in kind by an employer to his employee. If the employee has an option to receive additional compensation in lieu of meals or lodging in kind, the value of such meals and lodging is not excluded from gross income. However, the mere fact that an employee, at his option, may decline to accept meals tendered in kind will not of itself require inclusion of the value thereof in gross income. Cash allowances for meals or lodging received by an employee are includible in gross income to the extent that such allowances constitute compensation."

employee to perform his job during his meal period."

Finally, the government's contention that, "It would appear that the expressed safety objective, as well as the objective of making a patrolman available to answer questions, could be achieved just as well and at less cost by having the patrolman park his automobile and remain in it either in front of a restaurant, shopping center or other populated place", even if true, is irrelevant since existing Highway Patrol rules are still a convenience to the employer. It serves little purpose to speculate on what might be best done in the future.

Judge Devitt, at page 884 of 237 F.Supp., concludes:

"The defendant's contention that the subsistence allowance is not excludable under § 119 because the meals were not consumed 'on the business premises of the employer,' while theoretically arguable, doesn't make much sense because the 'business premises' of the State of Minnesota extend over all of the State and particularly to the highways of the State where these plaintiffs worked. United States v. Barrett, 321 F.2d 911, 5th Cir.. (1963)."

It would seem to be patently obvious that restaurants near or adjacent to highways are, in this case, "on the business premises of the employer" as required by § 119 of the Code. In United States v. Barrett, 5 Cir., 1963, 321 F.2d 911, it is stated at page 912:

"The Commissioner takes too narrow a view of what constitutes the 'business premises' of the Mississippi Highway Patrol. The major 'business' of this state law enforcement agency is obviously not confined to isolated station houses; rather, it covers every road and highway in the state twenty-four hours a day every day. In view of the special nature and functions of the highway trooper's work, it is unrealistic to treat the employer's place of business as limited to the state patrol headquarters. This criterion, therefore, is not decisive against the excludability of the sums here in question."

Congress did not put geographic bounds on the business premises of an employer. The following contention is made by the government:

"*  *  *  Likewise, there are many other employees, such as local bus and truck drivers, local salesmen and others whose jobs require them to travel constantly during a day over highways within a limited area and who receive a cash allowance for meals eaten during working hours. Under the rationale of the decision below, as well as that of *Barrett,* these other employees may claim a right to exclude these cash allowances from their gross incomes notwithstanding that the highways never have been recognized as part of such employers' business premises."

Obviously such a result does not follow. It is conceivable, plausible and believeable, in the present Highway Patrolmen context, to call all state land the business premises of the state since the state can regulate, tax and exercise a great deal of control over the land. Such is not true of a private employer, whose business premises are arguably limited to that which can be controlled and regulated by him.

In regard to the "in kind" requirement of § 119, Judge Devitt concludes as follows, at page 884 of 237 F.Supp.:

"The defendant also urges that § 119 permits exclusion only where the meals are furnished in kind and not where a cash reimbursement for meals is made. That, too, is straining too much in the interest of efficient tax collection. What is the real difference, for tax purposes, in the employer furnishing a meal or paying for one furnished by another? I see none. A very estimable appellate court has so held. Saunders v. Commissioner, 215 F.2d 768 [771–772], 3rd Cir. (1954).

"The nub of the issue is what, in the light of all of the facts, does the $3-per day allowance represent—expense reimbursement or compensation? The clear answer, as I see it, is expense reimbursement."

See, also, Williamson v. Commissioner, 8 Cir., 1955, 224 F.2d 377, 379–381, which holds a monetary housing allowance paid to a minister was not part of his gross income. We agree with Judge Devitt, Saunders v. Commissioner, 3 Cir., 1954, 215 F.2d 768, and *Williamson*. It is not clear to this court that Congress did intend, in fact, to require that meals must be provided in kind to qualify under § 119. It is evident that § 119 does not in specific terms contain an "in kind" requirement. The government cites the following from H. Rep. No. 1337, 83d Cong., 2d Sess., 3 U.S.C. Cong. & Adm. News (1954), pp. 4017, 4175, in support of its position:

"* * * This section applies only to meals or lodging furnished in kind. Therefore, any cash allowances for meals or lodging received by an employee will continue to be includible in gross income, as under existing law, *to the extent that such allowances represent compensation.*" (Emphasis supplied.)

Similar language is found in S. Rep. No. 1622, 83d Cong., 2d Sess., 3 U.S.C. Cong. & Adm. News (1954), pp. 4621, 4825. The phrase "to the extent that such allowances represent compensation" could easily modify the words "cash allowances", meaning that only cash allowances which "compensate"—i. e., reward

or benefit rather than reimburse—are includable in gross income. In the instant cases the evidence abundantly supports a conclusion that in fact the subsistence allowance was not compensation.

The *Barrett* and *Saunders* cases,[2] supra, both cited by the District Court, are two of apparently only four cases involving the question of the exclusion from individual gross income of meal payments made to state highway patrolmen. The other two cases, Magness v. Commissioner, 5 Cir., 1957, 247 F.2d 740, certiorari denied, 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414, and Hyslope v. Commissioner, 1953, 21 T.C. 131, hold contrary to *Barrett* and *Saunders* in that the former two cases include a reimbursement as part of gross income. *Barrett* is the only Court of Appeals decision arising under § 119, the others having arisen prior to the 1954 Code. A discussion of these cases would be beneficial at this point. For additional discussion of these cases, see 2 Mertens Law of Federal Income Taxation, § 11.16, pp. 61–62, as supplemented.

In *Hyslope*, the initial case in this area, the taxpayer was a State Police Trooper from Indiana who sought a declaration that the $70 per month paid to him "* * * as reimbursement for the expense of uniform maintenance, telephone, lodging while away from home, meals eaten during his daily tour of duty, and occasional meals bought for prisoners temporarily in his custody", 21 T.C. at 132, should not have been included as part of his gross income under § 22(a) of the 1939 Internal Revenue Code.[3]

2. As a sidelight, it is interesting to note that the Commissioner has refused to follow the *Barrett* and *Saunders* decisions, albeit he has seen fit to apply for certiorari in neither. See TIR–741 reprinted as Miscellaneous Announcement 625 in Mertens Law of Federal Taxation, Current Materials Rulings, p. 378.

3. Under § 22(a) of the 1939 Code, in pertinent part:
"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal services (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The taxpayer was subject to call at all times, although he normally worked a ten-hour average day. His home was "* * * within 20 miles of the most distant point in the area of the State to which he was assigned". 21 T.C. at 132. He notified his headquarters at all times of his whereabouts. The Tax Court held the reimbursement was within the meaning of gross income as defined by § 22(a) of the 1939 Code and, further, was not a proper deductible expense under the pertinent sections of the 1939 Code. The court distinguished Jones v. United States, 1925, 60 Ct.Cl. 552, on the grounds that the *Jones* holding, allowing military personnel to exclude from gross income allowances made to them for subsistence and quarters, should not be extended to civilian personnel.

*Saunders*, decided in 1954, involved § 22(a) of the 1939 Code and a taxpayer who was a trooper in the New Jersey State Police. By state law the taxpayer could not withdraw from the troopers prior to the end of a two-year enlistment and then only with official permission. He could and did maintain a home and family, although he had to spend two-thirds of his nights at his station barracks. The taxpayer was subject to call 24 hours a day and he had to inform the station of his whereabouts at all times. For the taxable year in question the taxpayer was given a monthly allowance of $70 "in lieu of meals" (215 F.2d at 770) formerly served at the station. The station meals were discontinued "* * * to give better police protection and coverage to New Jersey citizens by not having the roads left unpatrolled and state areas unprotected at any time." 215 F.2d at 770. Under a state police rule the taxpayer and other troopers had to procure meals "* * * at a suitable place in the nearest vicinity of assigned patrols, stations or headquarters. Station, District and Region Commanders will control the time allotted

for meals." 215 F.2d at 770. In holding that the reimbursing cash payments were not to be included in the gross income of the taxpayer,[4] Chief Judge Biggs, of the Third Circuit, speaking for a panel consisting of himself and Judges Maris and Goodrich, stated at page 774 of 215 F.2d:

> "* * * we conclude that Saunders was required to take his meals on the basis of this system and thus as a practical matter was compelled to accept the rations allowance for the convenience of his employer and that the allowance was not income taxable to him."

The *Saunders* court questioned the grounds of distinction of the *Jones* case, supra, raised by *Hyslope* and also by the earlier case of Gunnar Van Rosen v. Commissioner, 1951, 17 T.C. 834, 839-840, by designating such distinction artificial as relating to any meaningful difference between military and civilian personnel. The *Saunders* court felt *Hyslope* was not persuasive authority since, as stated at page 775 of 215 F.2d:

> "* * * The record in that case shows that Hyslope lived at home and usually took at least one meal there and that the places and times for eating while on duty were not prescribed in the same manner as they were for Saunders in New Jersey."

Judge Biggs further noted at page 775 of 215 F.2d:

> "* * * If, however, this distinction be too slight to be operable, with all deference to the Tax Court, we do not consider the *Hyslope* precedent of too great weight in view of Jones v. United States."

In *Magness*, a 1957 decision, the Fifth Circuit was concerned with subsistence money of $4.50 per day received "in lieu of meals during the year 1952" (247 F.2d at 741) by a taxpayer who was a

---

4. The court did not pass on the question as to whether the taxpayer could deduct the payments as traveling expenses incurred "while away from home in the pursuit of a trade or business" under the 1939 Code since this was not necessary, in light of its holding as to § 22(a).

member of the Uniformed Division of the Georgia Highway Patrol. The taxpayer therein was subject to call 24 hours per day and had to at all times keep his headquarters advised of his whereabouts. He was required to live in barracks at the post where he was assigned. The $4.50 was paid to the taxpayer every day of the year, including off-days and vacation days. His only restriction was that while on duty "* * * he eat at some restaurant on his route and that he report previous to doing so to his headquarters, telling them how he could be reached." 247 F.2d at 742. For the year in question the taxpayer was never called to duty while on vacation or on days off. The court held the subsistence payments to be income under § 22(a) of the 1939 Code. The *Magness* court distinguished *Saunders* as follows, at pages 743–744 of 247 F.2d:

> "This case is probably distinguishable from Saunders v. Commissioner of Internal Revenue, supra, inasmuch as: (a) There it was conclusive that the $70.00 a month received by Saunders in lieu of rations was not intended as compensation, and, in fact, the Tax Court found that the rations allowance 'was not regarded or accounted for as compensation, either in the State Police Budget or by the State Civil Service Commission.' Here the Tax Court failed to find that the 'subsistence payment' was intended as a reimbursement. In fact, the provision of the Georgia law providing for a subsistence allowance is found in Section 92A–209 of 27 Code of Georgia Annotated, entitled 'Same; personnel; officers'; *salaries*' (Emphasis supplied), and not in Section 92A–237 entitled 'Allowance for board and quarters.' (b) Saunders received $70.00 per month to pay for meals while actually on patrol, and he was required to eat at a place on his route at a particular time. Magness, on the other hand, received $4.50 per day every day of the year, even while on vacation or on days off, and, except

for the time when he was actually on patrol, could eat at any place he chose. When he was on patrol the only requirement was that he notify his headquarters where he could be reached while he was eating. He testified that, while he was off duty, he could do anything he wanted to provided he notified his headquarters so that they could get in touch with him in case of an emergency."

The issue of deductibility was not raised in *Magness*, which dealt only with whether such subsistence money should be included in individual gross income in the first instance.

The fourth and most recent case, *Barrett*, held that members of the Mississippi State Highway Patrol were not required to include in their gross income, under § 61 of the 1954 Code, reimbursements of up to $4.00 a day made for meals and other expenses incurred while the patrolmen were on duty. Payments were based on expense accounts submitted by the individual patrolmen. The taxpayers in *Barrett* were also on call 24 hours per day, but normally worked a 12-hour duty tour. The Fifth Circuit, who also decided *Magness*, stated in *Barrett* at page 913 of 321 F.2d:

> "The same considerations which guided the Court in *Saunders* obtain here. In *Saunders* the New Jersey patrolmen did in fact expend their entire compensation for meals while on duty. The taxpayers here were reimbursed only for money actually spent (no more than four dollars a day for three meals), and in order to obtain this money, they had to submit vouchers detailing the sums spent for each meal each day. This fact distinguishes the present case from Magness v. Commissioner, 5 Cir. 1957, 247 F.2d 740, cert. denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414 and Hyslope v. Commissioner, 21 T.C. 131 (1953), on which the Commissioner relies. In *Magness* the highway patrolman was paid $4.50 per day for meals

whether he was on duty or on vacation and regardless of whether he actually spent that much for his meals. In *Hyslope* an Indiana State Trooper received a flat monthly sum of seventy dollars to cover meal expenditures. He was not required to submit vouchers substantiating this expense, but received the same amount each month, regardless of whether he spent more or less than that. Neither case compels a result different from the one we reach here. Indeed, in *Magness* our decision was predicated in part upon that very lack of correlation between reimbursement and expenditures which was present in *Saunders*. See Magness v. Commissioner, 247 F.2d at p. 744.

"We find ourselves in accord with *Saunders*: the 'convenience of the employer' test is the key criterion in determining whether or not payments are income. In that case as in this, the sums in question were in addition to the trooper's fixed statutory compensation. The patrolmen were required to eat meals along their regular routes so that the patrol areas would not be unguarded during mealtime, and they were required to notify their headquarters where they were eating so that they could be reached in case of an emergency. The sums paid the patrolmen so that they could eat at restaurants on their tour of duty were thus primarily for their employer's benefit.

These sums were, therefore, properly excluded from income."

At first blush these cases may not seem to raise significant differences, but we believe that *Saunders* and *Barrett* are distinguishable from *Hyslope* and *Magness* and that the instant cases are directly controlled by the former two results. All cases are similar in some respects— e. g., in all cases the taxpayers were on call 24 hours a day and had to report their whereabouts at all times to their headquarters. However, in *Saunders*, *Barrett* and the instant cases it is obvious that the restrictions imposed by the respective states at mealtimes (as to where meals must be taken, etc.) were much greater than those in *Hyslope* and *Magness*, which signifies that the "convenience of the employer" was a much more important factor in the former cases. A second important difference is that in *Saunders*, *Barrett* and herein there was a definite correlation between the amount reimbursed and the amount actually expended. In *Barrett* actual expense vouchers were used. In *Saunders* and herein the lower courts found that the reimbursement did not exceed and probably was less than actual expenditures for the items involved. In *Magness*, on the other hand, the taxpayer was given $4.50 per day whether he was on duty, off duty or even on vacation. In *Hyslope* there also was no finding of correlation between reimbursement and expenditure. Thus, in *Hyslope* and *Magness* the taxpayers were arguably receiving compensation, which was not the situation herein.[5] When compensation is

5. § 119 specifically provides that:
"* * * a State statute * * * shall not be determinative of whether the meals or lodging are intended as compensation."
Whether determinative or not, however, they may aid in reaching such a determination. In the instant cases a Minnesota statute, MSA § 290.08 provides:
"*Subd. 21. Highway patrol subsistence allowance.* Gross income does not include statutory subsistence allowance paid pursuant to the provisions of section 161.47, subdivision 2, and acts amendatory thereto. If any individual received a subsistence allowance to which this subdivision applies, no deduction shall be allowed under any other provision of Minnesota Statutes 1957, Chapter 290, and acts amendatory thereto, for expenses in respect of which he has received such allowance, except to the extent that such expenses exceed the amount excludable under this subdivision and the excess is otherwise allowable as a deduction under Minnesota Statutes 1957, Chapter 290, and acts amendatory thereto."
State statutes and policy have been considered in determining whether a reim-

present there is a stronger case for the inclusion of the reimbursement as part of gross income.

■ The government argues that the repeal of § 120 of the 1954 Code, set out below, in § 3(a) of the Technical Amendments Act of 1958, Public Act 85–866, 72 Stat. 1606, 1607, shows an intent by Congress to not give favorable tax treatment to subsistence payments made to police officers. § 120 had provided as follows:

> "(a) General rule.—Gross income does not include any amount received as a statutory subsistence allowance by an individual who is employed as a police official by a State, a Territory, or a possession of the United States, by any political subdivision of any of the foregoing, or by the District of Columbia."

The government alleges that "Congress expressed the intent that, by repealing the provisions [of § 120], it would bring the tax treatment of subsistence payments to police officials into line with that accorded to other taxpayers". See H.Rep.No.775, 85 Congress, 1st Sess.,

1958–3, Cum.Bull. 811, 817; S.Rep.No. 1983, 85 Congress, 2d Sess., 1958–3, Cum. Bull. 922, 935–936; U.S.C.Cong. & Adm. News (1958), p. 4791. Without debating the issue of Congressional intent, it is sufficient to answer the above contention by noting that we are here dealing with § 119 which obviously does not favor one occupation over another. If a highway patrol subsistence allowance qualifies under § 119, it should be treated exactly as any other item, irrespective of the occupation under which it arises, that qualifies under the provisions of § 119. Under § 119 an official's subsistence allowance cannot be accused of receiving favorable treatment and Congressional intent as to § 120 is thus not relevant herein.

■■ Having determined that appellees need not include the reimbursements involved herein as part of their gross income, and that they are thus entitled to the refunds sought, we note also that even if such sums had been includible in gross income they would be a deductible expense under § 162 of the 1954 Code, which, at the time in controversy, provided in pertinent part:[6]

---

bursement is compensation in cases both in accord with and contrary to the instant result. For example, as stated in *Saunders* at page 774 of 215 F.2d:

"* * * Although the intent and practice of the State authorities is admittedly not binding in determining the tax due the United States, see, e. g., United States v. Pelzer, 1941, 312 U.S. 399, 402–403, 61 S.Ct. 659, 85 L.Ed. 913, this does seem relevant in deciding whether 'it is evident * * * that the * * * quarters or meals * * * represents compensation.'"

The *Magness* court points out at page 744 of 247 F.2d:

"* * * Here the Tax Court failed to find that the 'subsistence payment' was intended as a reimbursement. In fact, the provision of the Georgia law providing for a subsistence allowance is found in Section 92A–209 of 27 Code of Georgia Annotated, entitled 'Same; personnel; officers'; *salaries*' (Emphasis supplied), and not in Section 92A–237 entitled 'Allowance for board and quarters.'"

It should be noted, also, that the reimbursement may be excludable from gross

income even if it is compensation so long as the specified requirements of § 119(1) of the Code are met. As noted by this court in Boykin v. Commissioner, 8 Cir., 1958, 260 F.2d 249, 254, a case dealing with lodging (§ 119(2)) rather than meals (§ 119(1)):

"* * * In any event, under our interpretation of section 119, we believe that, if the conditions imposed by section 119(2) are fully met, the value of the lodging furnished the taxpayer is excludable from gross income, regardless of whether such lodging constitutes compensation. If Congress had intended to impose the additional condition that the maintenance should not constitute part of the employee's compensation, it is reasonable to suppose that it would have said so. As previously stated, we feel the Act itself and its legislative history conclusively establish that Congress intended to impose no such condition."

6 See, also, § 1.162–17(b) of the Income Tax Regulations, which provides:

"(b) Expenses for which the employee is required to account to his

*"(a) In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \*

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; \* \* \*."

Our authority for this proposition is our opinion in Hanson v. Commissioner, 8 Cir., 1962, 298 F.2d 391,[7] wherein we held that a contracting executive whose work took him to various job sites was "away from home" within the meaning of § 162 while traveling on business, whether or not his trips were overnight. In *Hanson* we stated at pages 396–397 of 298 F.2d:

" \* \* \* Thus, the Commissioner's argument, and the Tax Court's holding, is that if a taxpayer is to take a two-day trip, the expense for meals is non-personal and deductible, but if he leaves in the morning and returns home that same evening, the expense for meals then is personal and non-deductible.

"Although discussing *travel* expenses while away from home (prior to the adoption of the 1954 Code), the words of the Tax Court in Waters [Kenneth Waters, 1949, 12 T.C.

414] seem peculiarly fitting to the present situation:

' " 'Travel \* \* \* while away from home' in its 'plain, ordinary and popular' sense means precisely what it says. It means travel while away from one's home. There is no connotation that the trip must be an overnight one, nor do we think Congress intended such a connotation. Surely it would be absurd to say that an employee who flies from Boston to Washington on business and returns to Boston the same day is not entitled to the deduction, but that if he takes two days for the whole trip, he is entitled to the deduction.' 12 T.C. at 416–417." '

"The same reasoning is equally applicable to the meals the employee eats in Washington on the two hypothetical trips, one of a single day's duration and the other of two. We fail to see reason or justification for the Commissioner's claim that the meals on a two-day trip are non-personal and deductible, while those on a one-day trip are personal and non-deductible, when such claim is based on whether an overnight trip was involved (or if there was at least a need for rest). The answer to the Commissioner's argument that the taxpayer here will be given 'a grossly unfair advantage' over other taxpayers is that the difference in

employer—(1) Reimbursements equal to expenses. The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer and which are charged directly or indirectly to the employer (for example, through credit cards) or for which the employee is paid through advances, reimbursements, or otherwise, provided the total amount of such advances, reimbursements, and charges is equal to such expenses. In such a case the tax-

payer need only state in his return that the total of amounts charged directly or indirectly to his employer through credit cards or otherwise and received from the employer as advances or reimbursements did not exceed the ordinary and necessary business expenses paid or incurred by the employee."

7. As was true with the *Barrett* and *Saunders* decisions, the Commissioner has refused to follow *Hanson*, wherein he likewise failed to apply for certiorari. See TIR–512 reprinted as Miscellaneous Announcement 479 in Mertens Law of Federal Income Taxation, Current Materials Rulings, pp. 203–204.

tax treatment between those who are 'away from home' and those who are not is the legislative mandate that the former may deduct the price of meals from gross income and the latter may not. When the determination, made upon the entire record, is that the taxpayer was 'away from home', the direction of the statute must be adhered to, albeit the expense is 'personal in nature.' "

The appellees herein clearly fall under § 162 as they were required to be and were "away from home" for certain meals while on patrol in any and all parts of their station areas.

These cases are in all things affirmed.